In the Matter of the Application of THE CITY OF NEW YORK, Appellant, Relative to Acquiring Title to Certain Uplands, etc., for the Improvement of the Water Front of the City of New York on the North River between West Eighteenth and West Twenty-third Streets, etc.

WILLIAM P. COLLINS and FREDERICK P. COLLINS, as Executors, etc., of WILLIAM COLLINS, Deceased, Respondents.

First Department, April 19, 1907.

Eminent domain — condemnation of leasehold interest — when tenant entitled to compensation for fixtures taken.

On the condemnation of property, a tenant under a lease entitling him to renewals is entitled to compensation for the taking of such permanent machinery as has been built into the building and used in connection with the leasehold for business purposes and which has little or no value when separated from the property.

A tenant's right of renewal is appurtenant to the property and when destroyed on condemnation the tenant is entitled to compensation therefor.

On condemnation commissioners should specify in their report the specific property for which the award is made.

APPEAL by the petitioner, The City of New York, from certain portions of an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 28th day of April, 1906, confirming the report of commissioners of estimate and assessment in the above-entitled condemnation proceeding.

*Theodore Connoly*, for the appellant.

*Joel J. Squier*, for the respondents.

INGRAHAM, J.:

The question presented upon this appeal, which is from an order confirming the report of the commissioners of estimate and assessment, is as to the value of certain property taken in this proceeding; the commissioners have included in their award the value of certain machinery, which it is claimed were fixtures and a part of the real property

taken. The real property was owned by the General Theological Seminary, who had leased it to William Collins, who constructed a building upon the property, placing in it certain machinery for the manufacture of boilers, tanks and machinery, about November 1, 1883. When evidence of the value of this machinery was sought to be interposed before the commissioners, it was objected to by the city on the ground that the city was not acquiring and has not acquired any of the articles for which an award was asked. This machinery all seems to have been built into the building or constructed upon foundations built into the ground, and connected with shafting which was connected with either steam or Croton water pipes. It seems to have been appropriate and proper for the uses to which the property was put by the tenant. Some of this machinery could have been removed from the building without serious injury to the freehold. The lease of this property was dated January 11, 1882, and was for twenty-one years to March 1, 1903. It contained a provision that the tenant should, within the first year of the term, build a good and substantial house at least two stories in height upon the property, and the landlords covenanted that at the expiration of the term they would, at their option, either grant to the tenant a new lease for a further term of twenty-one years, at a rent then to be fixed, or pay to the tenant the just and fair value, to be ascertained, of any house or houses to be built which would then be standing on the premises; the renewal lease to contain a covenant for a further renewal of twenty-one years at a rent to be ascertained; the rent for these renewals to be six per cent upon the estimated value of the lots as vacant property.

I think on the condemnation of property the owners of the buildings and leasehold are entitled to be paid the fair market value of the buildings as they exist, together with such permanent machinery as has been built into the buildings and used in connection with the leasehold estate for business purposes. It is apparent that in these leases, especially from ecclesiastical corporations, the lessee obtains a substantial right in the covenant of renewals which becomes an appurtenance to the property and which is necessarily destroyed by the condemnation of the property for public improvement. This machinery was used in connection with the building which belonged to the tenant. It would be manifestly unjust to

treat such property as personal property when its value after it was severed from the building would be a very small percentage of its value as a part of the building for the use of the tenants in the business which they were conducting. Assuming that if the landlord elected to purchase the building under the provisions of the lease, it would not be required to pay for such property and the tenant would be required to remove it, when the city condemns the property it takes from the tenant the building of which this machinery is a part, and it is only just that the tenant should be paid what the building as a whole is worth. What the tenant is entitled to is the fair market value of the property that is taken. That property is the value of the leasehold, which includes the probability of a renewal of the lease which would result in his being allowed to continue as lessee and use all of this property in connection with the building, and it seems to me, in view of this right that the tenant had in connection with his occupation of the property, that justice requires that the city should pay him for the property which is a part of the building and which has little or no value separated from the property which the city takes for its own purposes.

As to such personal property as can be readily removed and would have a substantial value disconnected from the building this rule would not apply, but as far as the property has become a real part of the building constructed for the particular use to which it is put by the tenant it seems to me that the tenant is entitled to what that property in use in connection with his leasehold is reasonably worth. That is the only way in which justice can be done to tenants occupying property of this kind who have erected a building and installed in it permanent machinery for use in the building and which is of little value disconnected from the use to which the property is put. As I view it the tenant is entitled to receive the fair value of the leasehold as it exists at the time title is acquired by the city. The particular property to be included in such an award must necessarily depend upon the character of the building, the character of the machinery and of the business carried on, and while much of this machinery may be old and antiquated if removed, so as to be then of little value, it is valuable for use by the tenant as a part of his leasehold interest in the property and his ownership of the building in which it was installed. As between

landlord and tenant the tenant is allowed to remove fixtures annexed to the freehold, but it is only as between landlord and tenant that the rule of the common law, that anything that was annexed to the freehold by a substantial connection becomes a part of the realty, has been relaxed. The city is not the landlord, and as against the tenant has not acquired the landlord's rights, but is taking this property against the wish of both the landlord and the tenant for its own purposes. The rule that exists as between landlord and tenant, which has been evolved by the courts to prevent injustice to the tenant, should not be applied so that a beneficial use of the property is taken from the tenant without making him a fair compensation for the property as a whole.

The commissioners had the advantage of seeing the property and the method of its connection with the building, of hearing the testimony of the experts in relation to it and its value, and as their award does not appear to be at all exorbitant, I do not think that we should interfere with it. The representatives of the city requested the commissioners to specify in their report just what property it was for which they had made an award, and I think that request should have been granted. In a case of this kind it is essential for both parties that there should be a definite statement of just what property was included in an award, as it is only the property for which an award is actually made that vested in the city; but I do not think, in this case, that we would be justified in reversing the order to have such a statement inserted in the report, as the property for which the tenants made their claim was specified, and both parties clearly understood what property was considered and for which the commissioners have made an award. The city will be entitled to the building, including this machinery, which was specified in the testimony of the experts as a part of it, and I do not see how there can be any confusion as to just what property was acquired in the proceeding.

It follows that the order appealed from should be affirmed, with ten dollars costs and disbursements.

Patterson, P. J., Clarke, Houghton and Lambert, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements.