In the Matter of the Application of the CITY OF NEW YORK,
Appellant, Relative to Acquiring Title to Real Property
Required for the Widening of Allen Street in the
Borough of Manhattan.

DAVID J. ERSHOWSKY, Respondent.

(Argued February 9, 1931; decided May 12, 1931.)

Arthur J. W. Hilly, Corporation Counsel (Joel J. Squier and Edward A. Weingarten of counsel), for appellant. The city of New York in a condemnation proceeding is authorized to acquire real property only. (Matter of People v. Johnson & Co., 219 App. Div. 285; 245 N. Y. 627; 275 U. S. 571; Matter of Briggs Ave., 196 N. Y. 255; Matter of Mayor of New York, 39 App. Div. 589; Matter of American Bank Note Co., 63 Hun, 506; Matter of Dept. of Public Parks, 53 Hun, 280; Matter of N. Y. C. & H. R. R. R. Co. v. Pierce, 35 Hun, 306; Matter of Wilcox [4th Ave. Subway], 213 N. Y. 218; Matter of City of New York [Inwood Hill Park], 197 App. Div. 431.) Articles inherently personal property do not become real property by virtue of being affixed to a building by a tenant for use in connection with his trade or business carried on in the leased premises. (Miller v. Plumb, 6 Cow. 665; Raymond v. White, 7 Cow. 319; Matter of Olympic Theatre, 2 Bowne, 279; Jackson v. State of New York, 213 N. Y. 34; McRae v. Central Nat. Bank, 66 N. Y. 489; Tifft v. Horton, 53 N. Y. 377; Smusch v. Kohn, 22 Misc. Rep. 344; Ombany v. Jones, 19 N. Y. 234; Herkimer County L. & P. Co. v. Johnson, 37 App. Div. 257; Potter v. Cromwell, 40 N. Y. 287; Lewis v. O. N. & P. Co., 125 N. Y. 341; Madfes v. Beverly Development Co., 251 N. Y. 14.) A tenant in possession of premises at the time title vested in the city under a lease having a condemnation clause has no unexpired term during which the trade fixtures may be used in connection with his leasehold and consequently he is not entitled to compensation for loss of use of his trade fixtures. (Matter of Mayor, 168 N. Y. 254; Matter of City of New York, 124 App. Div. 465; 192 N. Y. 539; Matter of N. Y., W. S. & Buffalo

*Ry. Co.*, 35 Hun, 63; *Jackson* v. *State of New York*, 213 N. Y. 34; *Matter of City of New York* [*North River Water-front*], 118 App. Div. 865; 189 N. Y. 508; *Banner Milling Co.* v. *State of New York*, 117 Misc. Rep. 33; *Matter of City of New York* [*Delancey Street*], 120 App. Div. 700; *Pause* v. *City of Atlanta*, 98 Ga. 92; *Matter of Starr Street*, 73 Misc. Rep. 380; *Emery* v. *Boston Terminal Co.*, 178 Mass. 172; *Matter of City of New York* [*Blackwell's Island Bridge*], 198 N. Y. 84; *People* v. *Stephens*, 71 N. Y. 527.)

*Henry Herz* for respondent. The lessee has a right against the city to recover for trade fixtures notwithstanding the acceleration of expiration of the lease under the condemnation clause therein. (*Matter of Waterfront on North River*, 219 App. Div. 27; *Matter of City of New York* [*Pier 39, East River*], 168 N. Y. 254; *Matter of City of New York* [*Piers Old Nos. 19 & 20*], 117 App. Div. 553; *Musante* v. *State*, 73 Misc. Rep. 534; *Poillon* v. *Gerry*, 179 N. Y. 14; *Jackson* v. *State of New York*, 213 N. Y. 34.) The taking deprived respondent of the unexpired term and, by reason of the condemnation clause, of any claim for leasehold damages resulting therefrom to be carved out of the award to be made to the landlord, but it did not deprive him of a claim against the city for damages to trade fixtures installed by him as tenant in the demised premises caused by the acquisition thereof under power of eminent domain. (*Matter of Daly*, 29 App. Div. 286; *Matter of City of New York* [*Delancey Street*], 120 App. Div. 700; *Matter of City of New York* [*Seventh Avenue*], 196 App. Div. 451; *Matter of Mayor of New York*, 168 N. Y. 254; *Matter of City of New York* [*North River Waterfront*], 118 App. Div. 865; 189 N. Y. 508; *Andrews* v. *D. B. Co.*, 132 N. Y. 348; *Matter of City of New York*, 193 N. Y. 117; *Matter of City of New York*, 192 N. Y. 295; *Matter of Willcox*, 142 App. Div. 680; *Matter of City of New York* [*Rockaway Boulevard*], 201 App. Div. 862.)

LEHMAN, J. Pursuant to resolution of the Board of Estimate and Apportionment adopted May 27th, 1926, the city of New York instituted proceedings to acquire title in fee to real property required for the widening of Allen street. Title to this real property became vested in the city on December 10th, 1926 (Greater New York Charter, § 976). Compensation or damages must be awarded and paid to the owner of the real property taken (§ 970); and an owner includes any " person having an estate, interest or easement in the real property to be acquired or a lien, charge or encumbrance thereon " (§ 969, subd. 3).

At the time the proceedings were instituted, a tenant, David J. Ershowsky, occupied the premises designated on the damage map as parcels Nos. 41 and 42. He used the premises to conduct a butcher trade or business. As between the landlord and himself he had the right to remove the fixtures at the termination of the lease. Except for the condemnation proceedings, the term of the lease would have expired on May 1st, 1927, a few months after the date when title to the real property vested in the city. The lease contained a provision for its earlier termination. " If the whole or a substantial part of the premises hereby leased shall be taken by the City, County, State or Federal authority for any public purpose, then the term of this lease shall cease from the day when possession of the whole or part so taken shall be acquired for such public purpose, and the rent shall be paid up to that day." An award has been made to the owner for the value of the leased property, and an award has been made to the tenant as compensation for the fixtures annexed to the property.

Upon this appeal the only question presented is whether the tenant's fixtures are " real property " within the meaning of the statute. At the hearing the city stipulated that " without waiving any objection to the lessee's right to recover in this proceeding compensation for the

fixtures installed in the building on Parcels Damage Nos. 41 and 42, the City agrees that if the Court should hold that the lessee is entitled to compensation for the fixtures installed therein, the amount of such compensation shall be the sum of $9,175." We are not concerned with the measure of damages. We must decide only whether the fixtures are so annexed to the land and building that they have become part of them and have been taken by the city.

No testimony was offered at the hearing which would show how these fixtures were annexed to the building, or, indeed, which describes them. It is evident that the court and both parties proceeded upon the assumption that implicit in the stipulation was a concession that the " fixtures " were so annexed to the real property that, while by agreement between landlord and tenant they remained the personal property of the tenant, they would have become part of the real property if they had been installed permanently by the owner of the fee. Our consideration of the record must proceed upon the same assumption.

We have said, in *Jackson* v. *State of New York* (213 N. Y. 34), " an appropriation of land, unless qualified when made, is an appropriation of all that is annexed to the land, whether classified as buildings or as fixtures, and so it has frequently been held. (*Matter of City of N. Y.*, 118 App. Div. 865; affd., 189 N. Y. 508; *Matter of Mayor, etc., of N. Y.*, 39 App. Div. 589; *Phipps* v. *State of N. Y.*, 69 Misc. Rep. 295; *Allen* v. *City of Boston*, 137 Mass. 319.)" In that case, it is true, the court was dealing with fixtures which had been annexed to the land by the owner of the fee; but the language of the opinion is broad enough to cover fixtures annexed by a tenant and which remained the personal property of the tenant. That the court did not intend that the rule should be restricted to annexations which are the property of the owner of the fee is made evident by its citation of authority

for the rule, for in two of the cases cited the fixtures had been annexed by the tenants. In *Matter of City of New York* (118 App. Div. 865; affd. by this court, 189 N. Y. 508) this court passed upon the question directly, and, though no opinion was written here, the court decided that the fixtures of tenants if annexed to the land or building become " real property " which the city takes in condemnation proceedings and for which compensation must be awarded.

It is, indeed, conceded by the city that it has become the accepted rule that an award must be made to a tenant for fixtures or structures annexed to the real property, though these are the personal property of the tenant, whenever the city in taking the real property destroys the leasehold interest of the tenant. (See *Matter of Willcox*, 165 App. Div. 197; *Matter of City of New York*, 192 N. Y. 295.) The city does not now ask us to overturn that rule. It urges only that the rule does not apply in any case where, at the time of the appropriation, the term of the lease has expired, or, as in this case, where the lease provides that it shall come to an end when possession of the property is acquired by a public authority for a public purpose. In such case, it is said by the appellant, the fixtures cannot be appurtenant to the fee which is appropriated, for they are not the property of the owner of the fee; they cannot be appurtenant to any leasehold appropriated, for no leasehold survives the appropriation of the fee. From these premises the deduction is drawn that the tenant's fixtures must be personal property and are not taken by the city.

The distinction which we are asked to draw ignores the nature of what the city takes by condemnation and its consequent obligation to pay compensation. The city takes the real property condemned, as it then exists. What is so annexed as to become a part of the real property taken is acquired by the city. For the enforced premature removal of property which is excluded from

the taking, no consequential damages may be awarded. (*Jackson* v. *State, supra; Banner Milling Co.* v. *State of New York,* 240 N. Y. 533; *Matter of N. Y., W. S. & B. Ry. Co.,* 35 Hun, 633.) The city pays for what it takes and nothing else. By such taking it extinguishes all existing rights and interests in the property taken. " Where the whole of any lot or parcel of real property, under lease or other contract, shall be taken for any of the purposes aforesaid, by virtue of this title, all the covenants, contracts and engagements between landlord and tenant or any other contracting parties, respecting the same, or any part thereof, shall, upon the vesting of the title in the City of New York, cease and determine and be absolutely discharged." (Greater New York Charter, § 979.) Even if the lease by the landlord to the tenant in this case had not contained a clause expressly providing that " the term of the lease shall cease " when possession of the property is taken by the city, nevertheless by virtue of the fiat of the sovereign, the lease would " cease and determine and be absolutely discharged " upon the vesting of title which, indeed, preceded the actual taking of possession. No leasehold can survive the appropriation of the land itself, and where the city takes annexations to leased real property, it takes them, not because they are owned by either landlord or tenant or are appurtenant to some interest in the property, but because they are part of the real property. " The public right is exercised upon the land itself, without regard to subdivisions of interest by which the subject is affected through the various contracts of individual owners." (*Edmands* v. *City of Boston,* 108 Mass. 535.)

In fixing awards in condemnation proceedings, the value of what has been taken must be determined and then that value must be divided among those whose interests are extinguished by the taking. Those interests may be defined by contract of the parties interested and in the same way the parties may determine by agreement how

compensation shall be divided upon the extinguishment of those interests by the sovereign. In this case, the clause of the lease which provided for its termination upon the vesting of title to the land in the city evidences an agreement between landlord and tenant that the tenant shall receive out of the award no compensation for his leasehold interest. Even so, the tenant retains the right to compensation for his interest in any annexations to the real property which but for the fact that the real property has been taken, he would have had the right to remove at the end of his lease. (*Matter of Mayor of City of New York*, 168 N. Y. 254; *Poillon v. Gerry*, 179 N. Y. 14.) Towards the sovereign exercising the power of eminent domain, the agreement of the parties could have no effect and was not intended to have effect. What the sovereign takes in the exercise of its power, it determines by its own decree. By statute the sovereign has decreed that all that constitutes real property, as defined by the statute, is appropriated by condemnation proceedings, and that all interests in the real property as so defined are extinguished by the taking. The agreement of the parties cannot change that definition. Our problem is to determine whether the tenant's fixtures constitute real property within that definition.

In many jurisdictions the appropriation of real property may be qualified by the exclusion of structures upon the land. Then the problem is different. In such case compensation is paid for what is taken and, sometimes, consequential damages, caused by the taking, to property excluded therefrom. Then payment may be restricted " to the difference between the value of the detached articles and the value added to the building when they were used in connection with it." (*Jackson v. State, supra.*) In such jurisdictions the correct rule to be applied may be that as to fixtures of a tenant not taken " the increased value of the premises for rent in consequence of the putting in of such fixtures and improvements

may properly be considered in computing the damages to the leasehold estate." (*Pause* v. *City of Atlanta,* 98 Ga. 92, 105.) Of course, where a tenant receives damages for the destruction of the value of the leasehold estate as increased by the presence of the fixtures and still retains his property in the fixtures, he has full compensation for any injury he has suffered. The decisions like *Allen* v. *City of Boston* (137 Mass. 319), *Emery* v. *Boston Terminal Co.* (178 Mass. 172), in Massachusetts, must be read in the light of the statutes in force in that State (Massachusetts General Laws, 1921, ch. 79, § 13; Massachusetts Public Statutes, 1882, ch. 49, § 9), which permit the exclusion of structures, fixtures and even trees from the appropriation of the land to which they are annexed, and authorize the award of consequential damages when excluded. So read, these cases have no relevancy to the question presented here, where the appropriation of the real property has been subject to no qualifications.

The real property taken " includes all lands and *improvements* * * * and every estate, interest, * * * privilege, easement and franchise, * * * including terms for years and liens by way of judgment, mortgage or otherwise." (Greater New York Charter, § 969, subd. 4.) " Whatever is land within the general and legal meaning of the term, is to be estimated in ascertaining the compensation." (*Schuchardt* v. *Mayor,* 53 N. Y. 202.) Question as to the ownership of, or succession to, structures or fixtures annexed to the land has arisen in many forms between landlord and tenant, vendor and vendee, heirs and personal representatives. In each case the problem presented is the proper division, if any, which is to be made between the owner of the real property, his assigns, privies or successors, who base their claim of ownership upon the assertion that the fixtures or structures have become a part of the real property, and other parties who base their claim of ownership upon the assertion either that the

structures or fixtures have never been so annexed to the realty as to lose their quality of personal property or that they have been so severed, actually or constructively, as to gain or regain the quality of personal property. In each case the underlying question may be formulated: Do the structures or fixtures constitute real or personal property between rival claimants of title? Varying factors have dictated the answers given by the courts when they were called upon to decide the question between rival claimants of title. What may constitute personal property where the contest is between landlord and tenant may be real property where the claimants stand in other relation. The nature of the structure or fixture and the mode of its annexation may be the decisive factor in some cases; not in all. Judicial definitions of what constitutes real property or personal property must often be limited to the problem presented in the particular case which called for formulation of the definition. Here the contest is not between rival claimants of the property. The city has taken the real property in the condition in which it was at the time of the appropriation. It may have been the intention of these owners that annexations to the realty should not become part of the real property. As between the parties the courts will, at least at times, give effect to that intention; but when the city takes the property it takes the property itself with all its "improvements," and extinguishes the title of all who had any interest therein. That rule constitutes the foundation of the decisions that the city must pay for fixtures annexed to the real property by a tenant, though as between landlord and tenant the annexations remained the personal property of the tenant, severable by him at least before the expiration of his term. (See *Matter of City of New York*, 118 App. Div. 865; affd., 189 N. Y. 508; *Phipps* v. *State of New York*, 69 Misc. Rep. 295, both cited with approval in *Jackson* v. *State, supra;* Nichols on Eminent Domain, § 234.)

Distinction must, of course, be made between chattels which have " such a determinate character as movables that they remain personal property, after their annexation to real estate, independently of any agreement between the owner of the chattels and the owner of the realty which so provides," and " the class of movables which, after attachment, continued to be personal property, or became real estate, accordingly as the owner of the chattels and the owner of the real estate might have agreed." (*Madfes* v. *Beverly Development Corp.*, 251 N. Y. 12.) Though both are sometimes referred to as " fixtures," articles which are " in their nature, mere furniture, and, therefore, chattels, and not appurtenances to the building " cannot constitute a part of the realty. (*McKeage* v. *Hanover Fire Ins. Co.*, 81 N. Y. 38.) The term " fixtures " as used in this opinion is confined to articles so affixed to the realty that they would have become part of the realty if they had been installed permanently by the owner of the fee. It excludes " goods affixed to realty which, in the absence of an agreement that their original character should be retained, would not have ' become part thereof '." (*Madfes* v. *Beverly Development Corp.*, supra.)

Though agreement between landlord and tenant may determine that a tenant's title to " fixtures " after they are affixed to the realty remains in the tenant and shall not become merged in the title to the real estate, the fixtures do not even as between the parties to the agreement remain in full sense personal property, for it has been held that that property in tenant's fixtures which are not removed at the expiration of the term of the lease or upon surrender of possession of the land to which they are attached, vests in the landlord. (*Talbot* v. *Cruger*, 151 N. Y. 117.) " On the whole, the tenor of the authorities is, that, during the period within which the tenant has the right of removal, he has an actual interest in the things affixed by him or purchased by him as

fixtures; an interest which is neither an interest in chattels nor an interest in land, but it is a chattel interest in things for the time being affixed to land." (Tyler on Fixtures, p. 165.)

The courts, recognizing that by agreement title to and property in articles affixed to the realty may at times be retained by the original owner, have sustained actions brought for interference with or deprivation of such title and property. For that purpose the courts disregard the annexation to the land and treat the articles as chattels. For wrongful deprivation of his property in such articles, the owner may bring an action for conversion. Treating the articles, as between the parties to such actions, as chattels, the courts have at times referred to the articles as " chattels." The courts have never by the use of the word " chattel " intended to indicate that in all circumstances and as between all parties, fixtures annexed to realty without intention that they should become a permanent part thereof, are to be treated as chattels.

"An article, which remains all the time in the same position and condition, may turn out to be real property as between some claimants, and, as between others, personalty." (Reeves on Real Property, § 10.) An interesting example is to be found in *Mott* v. *Palmer* (1 N. Y. 564). There the defendant conveyed a farm to the plaintiff with warranty of seizin. A fence had been erected upon the farm which would have passed to the plaintiff with the land if it belonged to the defendant. In fact, the fence had been affixed to the land by an occupant upon an agreement with the defendant that the fence might be removed by the occupant. Consequently the plaintiff, who refused to permit its removal, had been compelled to pay damages to the owner of the fence in an action for conversion. He was then permitted to recover the amount of these damages in an action against the defendant for breach of his warranty of seizin because

as between grantor and grantee of the land the fence was part of the land as described in the deed. The agreement between the occupant and the owner resulted in the retention of title to the fence by the occupant, though affixed to the land. Nevertheless that agreement could not affect the fact that by annexation to the land the fence became part of the land as described in the deed. So here the agreement of the landlord and tenant resulted in retention of title to the fixtures in the tenant. It cannot affect the description of real estate contained in the statute, and within that description the fixtures are part of the real estate which the city has taken. So long as they constitute " improvements " to the real estate, it is immaterial whether for other purposes the courts of this jurisdiction would regard them as chattels.

That result is in accordance with the decisions of the courts of this State, and the uniform practice in condemnation proceedings. The fixtures of the tenant were annexed to the land, and though the personal property of the tenant as between himself and his landlord, they constitute " improvements " to the land, within the meaning of the statute, at least so long as they could be used in connection with the land. At the time of the appropriation of the land, the improvements were still annexed to the land and could be used by the tenant in connection with the land. By the force of the statute the tenant's rights under the lease ceased when the city took title to the land; by agreement of the parties the tenant's right to compensation for the value of the leasehold did not survive the taking. That agreement did not change the nature of the annexations or the title of the tenant to the annexations. So long as they were not severed, the annexations could be used in connection with the real property, enhanced the value of the real property and were part of the real property taken by the city. The city appropriated the real property in the condition in which it was at the time it took title, and then the fixtures were part of the real

property and enhanced its value. Perhaps severance at the expiration of the tenant's term, five months after the date when the city took title to the real property, might have destroyed some of the value of the property; perhaps the parties might have chosen to preserve that value either by renewal of the lease or by transfer of title to the fixtures from the tenant to the owner of the fee. Choice lay with the tenant and landlord, and how that choice would have been exercised rests in speculation which does not concern the courts in this jurisdiction. As we have pointed out, in some jurisdictions appropriation of the real property may be qualified by excepting fixtures which the State does not desire to retain. Here no such qualification was made. The city has taken the real property together with the annexations to this property. It is immaterial that if the property had not been taken, some of that value might have been destroyed a few months thereafter by the severance of the annexation. The taking of the property has destroyed any right to severance which the tenant might otherwise · have had at the expiration of the lease. The physical condition of the property is not altered by the circumstance that title to the annexations was in the tenant while title to the land was in the landlord, nor does such division of title affect the value of the whole. The taking itself destroys all outstanding titles and renders severance impossible except by the will of the taker. The city must pay the value of what it takes. To the extent that the value of the real property as a whole is enhanced · by the fixtures annexed thereto, the value of the fixtures must be included in what the city pays, and the tenant is entitled to part of the award, not because the fixtures added to the value of the leasehold, but because they belonged to him and their value enters into the value of what the city has taken.

The order should be affirmed, with costs.

CRANE, J. (dissenting). If a lessee has machinery of a special or peculiar make which he desires to keep and possess as his own, is it possible for him to make any agreement with the lessor whereby he may take away his property at the termination of the lease and which agreement, if it so specifies, will also preserve to him his property in case of condemnation proceedings? In other words, must a lessee as matter of law in spite of all agreements to the contrary lose his personal property — trade fixtures — when the real estate is condemned? Although real estate only may be condemned for public use, is the city obliged to take in condemnation proceedings all trade fixtures for which it has no use?

These questions to my mind suggest the strict and narrow conclusion to which the majority opinion leads us. Trade fixtures to my mind do not necessarily as matter of law pass to the city under condemnation proceedings in spite of any and all agreements to the contrary.

For these reasons, I dissent.

KELLOGG, J. (dissenting). In England, it is the undoubted opinion of text-writers and judges alike, that chattels annexed by a tenant to real estate and removable by him during his term, pending the annexation, are part and parcel of the freehold. According to the former, a tenant's fixtures are " interests in land, defeasible by the act of the tenant who has the right to remove them " (Brown on Fixtures, p. 83); they are " part and parcel of the frank-tenement or freehold, so long as they continued annexed to it " (Id.); " the circumstance of the property being subject to a right of removal, and of being reconverted to a personal chattel, does not affect the nature and condition it has acquired by being incorporated with the realty " (Ferrard and Hogan [2d ed.], p. 8); tenant's fixtures which may be removed by the tenant " have always been considered as part of the land, though sever-

able by the tenant." (Ewell on Fixtures, p. 33.) Accord-
ing to the latter, a tenant may, by severance, reconvert
fixtures into chattels, but "until they are severed, they are
a part of their freehold" (per GIBBS, Ch. J., in *Lee* v.
*Risdon*, 7 Taunt. 188); trade or tenant's fixtures "have
always been considered as part of the land, though sever-
able by the tenant" (per BLACKBURN, J., in *Holland* v.
*Hodgson*, L. R. 7 C. P. 328, 336); removable fixtures, while
annexed, "are not goods and chattels at all, but parcel of
the freehold, and as such not recoverable in trover"
(per PARKE, B., in *Mackintosh* v. *Trotter*, 3 M. & W. 184);
"They cease to be chattels as long as they remain affixed
to the freehold, and they become a part of the freehold"
(per KINDERSLEY, V. C., in *Gibson* v. *Hammersmith & City
Ry. Co.*, 32 L. J. Ch. 337); the interest of the tenant "is
so far connected with the land that it may be considered a
right or interest in it" which, if the right be granted by
the tenant, he may not destroy by his surrender. (Per
WILLIAMS, J., in *London & Westminster Loan & Discount
Co.* v. *Drake*, 6 C. B. [N. S.] 798.)

In America the contrary opinion, that removable
fixtures remain chattels during the period of annexation,
seems to prevail. Thus in *Carpenter* v. *Walker* (140
Mass. 416) Mr. Justice HOLMES deplored the fact that
we had not, in this country, adhered to the English rule
that whatever is annexed to the freehold becomes a part
of the realty, stating: "The right of a tenant to sever
chattels which he has attached to the realty might be
admitted, and yet the property might be regarded as
land until severed, as it seems to be in England." Never-
theless, it was held that machines annexed to mill property
during the period of annexation continued to be chattels.
In so holding the court said that it was "more important
to respect decisions upon a question of property than to
preserve a simple test." In *Prescott & Booth* v. *Wells-
Fargo & Co.* (3 Nev. 82, 90, 91) the court, dealing with
fixtures removable by the party affixing them, made this

statement concerning the decisions in this and other States of the Union: " Fixtures of this kind have been held by many Courts in the United States as personal property * * * of the party attaching them to the soil before they become fixtures, and as he has the right to remove them at any time, and again convert them into personal property, some Courts have seen proper to hold them all the time as such. Under this view of the case, Courts in Maine, Massachusetts and New York have sustained actions of trover for fixtures that were never removed or detached from the freehold. (See *Russell* v. *Richards*, 1 Fairchild, 429; *Ford* v. *Cobb*, 20 N. Y. [6 Smith] 344; *Smith* v. *Benson*, 1 Hill, 176; *Wells* v. *Bannister*, 4 Mass. 514; *Ashmun* v. *Williams*, 8 Pick. 402.) "

That the rule so stated to prevail in this jurisdiction does so obtain is shown by the New York cases cited, as well as by many others. In *Smith* v. *Benson* (*supra*) it was held that a building affixed to land under an agreement that it might be removed by the person affixing it, and that meanwhile it should remain a chattel, did so remain, and that, if removal were refused, its value might be recovered in an action for conversion. In *Ford* v. *Cobb* (*supra*) it was held that a chattel mortgagee of machines and utensils, annexed by their purchaser, under contract, to lands of which he was the beneficial owner under contract, upon the default of the vendee upon both contracts, was entitled to recover their value in conversion from a subsequent purchaser of the land, who refused to deliver them up. The court said: "All the cases upon this branch of the law of fixtures proceed upon the idea that erections which would clearly be a part of the realty under ordinary circumstances, are personal chattels as regards the rights of a tenant who has put them up for the purpose of trade and manufacture." In *Tifft* v. *Horton* (53 N. Y. 377) it was held that the chattel mortgagee of machines, affixed to real estate by the owner, might recover their value in conversion from a mortgagee

of the real estate, who had taken possession and refused to deliver up the machines. The court said that the owner of the fee and the owner of the chattels having agreed that they should remain chattels during annexation, they did so remain. " The language of the authorities is, that the chattel in such case is personal property, for which an action of trover for the conversion of it may be maintained." Among other authorities to the same effect are *Davis* v. *Bliss* (187 N. Y. 77); *De Bevoise* v. *Maple Ave. Constr. Co.* (228 N. Y. 496); *East N. Y. El. Co.* v. *Petmaland Realty Co.* (243 N. Y. 477); *Madfes* v. *Beverly Development Corp.* (251 N. Y. 12).

It is true that none of these cases relate to tenant's fixtures. If, however, a private agreement, between others than lessor and lessee, that chattels annexed to real estate shall be detachable and removable therefrom, is sufficient to make them personalty during annexation, then an implied or express agreement between landlord and tenant to the same effect must equally make them chattels. Clearly the action of conversion would not lie unless they were chattels. Moreover, circumstances, such as the relationship of the parties, and the nature and implied purpose of annexation, may be sufficient from which to infer that the right of removal is retained by the person annexing. These circumstances would be known to the grantee of the land. Under the English rule, the grantee, having implied notice, would take subject to the right of removal, even if that right was an interest in real estate. Such could not be the case, if the right were given, not through implication from circumstances known to him, but through a private agreement between the parties of which he is unaware. Yet it is the law in this State, as will be seen from the cases cited, that the agreement, in such a case, will prevail to defeat the grantee's interest. An explanation can only lie in the fact that the things attached to real estate, under such an agreement, continue as chattels, so that a grant or mortgage of the land does not comprehend them.

We may agree that the English rule is better grounded in logic and common sense than is our own. Nevertheless we are dealing with a rule of property well established in this jurisdiction. That rule calls for a holding that the tenant fixtures of this claimant were at all times personalty, and, therefore, not subject to appropriation by the city which may condemn real estate and no other property.

I, therefore, favor a reversal, and dissent.

CARDOZO, Ch. J., POUND and HUBBS, JJ., concur with LEHMAN, J.; CRANE and KELLOGG, JJ., dissent in opinions, in which O'BRIEN, J., concurs.

Order affirmed.