Alexander Del G-iorno, J.
The claimants herein owned a plot of land upon which claimant, David H. McMillan, a bricklayer, had built a substantial two-story house. On November 19, 1928, for a consideration of $18,420.40, the claimants entered into a contract of sale with the County of Westchester, acting by the Westchester County Park Commission, as vendee, whereby, in lieu of condemnation, they agreed to sell the parcel and improvements thereon. The parcel was located in the Town of Harrison, and was known as Parcel 37, Sheet 17, on a map entitled “ Westchester County Park Commission Map of Lands to be Acquired for the Cross-County Parkway, Westchester County, N. Y.” Title passed by a full covenant and warranty deed to the County of Westchester on December 31, 1928.
By this transaction, the parcel became a part of the PelhamPort Chester Parkway lands, which itself later became a part of the Thruway System, New England Section.
From the testimony, and some exhibits, it is to be assumed that negotiations soon got under way for the purchase by the claimant, David H. McMillan, of the building erected on the parcel. By letter of April 15, 1929, the claimant, David H. McMillan, submitted for the house only, a bid of $500 to the Westchester County Park Commission. By letter of April 19, 1929, Mr. George E. Ferguson, right of way engineer for the commission, replied that claimant’s bid of $500 had been received and that it was entirely too low, but that he would recommend a bid of $1,500. On April 20, 1929, David H. McMillan replied in writing, submitting a bid of $1,500. On May 7, 1929, McMillan received a letter from Mr. Ferguson which stated that the offer of $1,500 for the purchase of the building had been approved at a meeting of the commission held May 3, 1929, and requested that McMillan forward a check for $1,875, of which $1,500 would be applied to the purchase, and the sum of $375 “ to be retained as a security in accordance with the rules and regulations of this Commission covering the removal of buildings ”. On May 10, 1929, McMillan sent his check for $1,875. This event closed the transaction of the sale of the house to the claimant, David H. McMillan. (Any award herein would be made only to him.)
On May 13, 1929, Mr. Ferguson wrote a letter to McMillan which ‘ ‘ will act as your authority to remove forthwith the building ”. On the same date, Mr. Ferguson wrote to Mr. Halley, another officer of the commission, an interdepartmental letter, “enclosing herewith a signed bid form together with ” the aforesaid check.
*398 On May 2, 1929, the commission, by resolution, approved the sale of the building for $1,500, which, as aforestated, David H. McMillan paid.
On June 29, 1929, Mr. Ferguson again wrote to Mr. Halley, attaching a check for $30 received from McMillan in payment of “ground rent” for the months of May, June and July, and advising further that McMillan had ‘ ‘ agreed to pay us a ground rental of $10.00 a month until such time as he is able to remove the building ’ ’.
Previously, on July 3, 1929, Mr. George Henf, for Mr. Ferguson, wrote to the claimant, advising that Mr. Ferguson had recommended to the commission a ground rent of $15 per month from the date of title, and requesting an additional $105 for that period.
Some three years later, on April 26, 1932, a Mr. George S. Haight, right of way engineer for the commission, wrote to David McMillan, notifying him that his tenancy of the parcel would be terminated on the 31st day of May, 1932, and requiring him to remove the said building on or before said date, “ in default of which proceedings will be instituted against you pursuant to the terms and provisions with respect to the removal of the buildings signed by you and for the recovery of the possession of said premises ”. The letter further notified him that beginning June 1, 1932, the rental of said parcel would be $20 per month.
This state of affairs continued until June 8, 1932, when the commission ‘1 Resolved: That the following rentals be, and the same hereby are, approved: — at $20 per month beginning June 1, 1932”.
This comfortable and unusual relationship continued between the claimant, McMillan, and the commission for quite some time after. In fact, on December 12, 1936, the commission adopted another resolution which states, in effect, that upon the recommendation of the real estate department, it was resolved that $275 of the $375 security deposited was to be applied for rent not paid (testimony indicated this was during the depression years when claimant was unable to pay, and was in liquidation of summary proceedings for nonpayment of rent, which had proceeded as far as the' issuance of an order for warrant to dispossess to the Sheriff, which however was never delivered or executed), and that $100 was to remain as security.
Now, some 18 years later, by letter dated November 19, 1954, Mr. Haight, for the commission, advised the claimant that his request to purchase an adjoining parcel upon which to relocate his home, known as Parcel 9-0 on Sheet 37, Cross County Park *399 way, could not be entertained but that any sale would have to be made by public auction. He was advised to submit an offer with a 10% deposit which would be submitted to the Board of Supervisors. This was not accomplished.
Returning to the original bid of $1,500 plus $375 security, the parties agreed that it was not made upon the usual forms provided by the commission, but only by the personal letter of Mr. McMillan, as above stated. However, the State marked as State’s Exhibit A, a blank printed form of the Rules and Regulations of the Westchester County Park Commission, under which buildings and appurtenances were sold for removal from Westchester County parks and parkways. Although asked a number of times whether he had signed or seen the same, the claimant stated he knew nothing of it or did not remember. The State did not produce the form allegedly signed by the claimant.
For the record, it may here be said that the commission’s rules and regulations provide that all bids must be made on regular forms of the commission; that the bid is to cover the removal of the building; that the bid is for no other purpose than that of speedy removal of the building; the work of removal must be completed within 30 days from the day of possession; that failure to remove said building within 30 days from the day of notification will work forfeiture by the bidder of ownership of the building and loss of moneys paid, with cost of removal charged against the security. At the end of the form, the bidder certifies that he has read the rules, etc., and agrees to comply with the terms and conditions.
On April 11,1956, the commission adopted another resolution in which it is set forth that, the State of New York having appropriated the aforesaid plot on which the house stood on September 21, 1955, the commission resolved to return to the claimant the balance of $100 left in its hands as security on December 12, 1936.
It is undisputed that the claimant continued to pay his ground rental to the commission until December 31, 1955, even after the State had appropriated the land, and to the State until February, 1956, and moved out of the house on March 13, 1956.
At the trial the State stressed the fact of the dispossess warrant which was issued in favor of the commission in 1936 and which was never executed. It claims this lead to the forfeiture of the home by claimant.
The State blows hot and cold. In its relations with claimant before the trial he was treated as the owner. At the trial the State asserted he was not.
*400 On January 27, 1956, Mr. G. M. Shaw, chief land negotiator for the New York State Thruway Authority, advised in a letter to Mr. George Haight, now Superintendent of the Westchester County Park Commission, that ‘ ‘ the house owned by McMillan ’ ’ —was appropriated by the State on September 21, 1955.
The testimony further brought out that on November 1, 1955, the claimants signed an agreement of adjustment with one Leo J. Kane, an assistant land negotiator for the Thruway Authority, who witnessed their signatures. By this agreement, the claimants were to receive $19,000 for the house. This agreement, of course, bound only the claimants, and not the State until it was approved by the Comptroller. It was not approved; but by letter of July 9, 1956, Mr. Paul G. Baldwin, the Director of the Bureau of Bights of Way of the Department of Public Works, advised the claimants’ attorneys that the proposed agreement of adjustment had been rejected “ because it was believed to be in an amount far in excess of the value of the claim of David H. and Willa McMillan”. It was Mr. Baldwin’s opinion that the claim “ should be evaluated on the basis of the McMillans’ holding a 30-day leasehold with the right to remove the building. This office will entertain a proposed agreement of adjustment * * * which is valued on such premises ”.
Before this, and on November 17,1955, the Thruway Authority had served on claimants a formal notice to quit by January 1, 1956 and a final order of dispossess was issued January 31,1956, permitting the issuance of a warrant of dispossess if the claimants remained after March 1, 1956. The warrant, to which claimant consented, was issued on March 5, 1956.
The claimants moved out voluntarily on March 13, 1956 leaving the house behind them, which was sold by the State to another person.
Thus, the clear issue here is whether the State is liable to the claimant for the value of the house as of September 21, 1955, the date of appropriation, or whether the claimant had lost his title to said land to the County of Westchester.
At the trial, the claimant asserted that he was the owner of the house, and submitted expert testimony of its value. The claimants’ appraiser testified that, in his opinion, the fair and reasonable market value of the land and building on the date of vesting was $23,500 of which the value of the house was set at $20,000.
He then deducted from the value assigned to the house the estimated cost of the foundation and, in answer to the court, also the cost of removal of the building.
*401 The expert then computed the value of the foundation and damaged pipes and fittihgs, etc., which would remain after the removal of the house, at $5,400, and the cost of removal of the building at $2,500.
The State offered no testimony of its own.
The court finds the fair and reasonable value of the house as it then stood to be $20,000, subject to deductions for the foundation and removal.
The court, upon the following analysis of the facts and conclusions, determines that the claimant, David H. McMillan, is entitled to an award of $12,100.
On November 19, 1928, the two claimants sold their land and building to Westchester County, in lieu of condemnation by the Westchester County Park Commission. On May 2, 1929, the bid of claimant, David H. McMillan, was accepted by the commission, together with the $375 held as security for the cost of removal of the building. The commission established and imposed a rent, “ ground rent”, while the house was on the land, which was nominal, but nevertheless was rent, and the claimant rollicked happily along on the hapless waves of indecision of the commission. Now and then the commission huffed but never intended to blow the house down. The commission even took cognizance of the great depression, and in place of the rent McMillan could not pay for which a final order of dispossess had been made, the commission deducted $275 from the security deposit and left the McMillans alone. It is undisputed that McMillan paid rent until after the State vested title to the land and building in 1955.
Upon such state of facts, how are we to decide that the claimant had forfeited his title to the house to Westchester? When did Westchester ever make such claim? Upon what agreement of law was Westchester made the owner of the house ? The answers, in my opinion, are all in the negative. Westchester sold the house to McMillan and never later acquired title to the house by forfeiture. It never questioned his ownership thereof. The claimant never abandoned the occupancy thereof, nor did Westchester assert its right to have the house removed, such as by issuing a final warrant to the Sheriff to dispossess the claimants for nonpayment of rent in 1936, or by itself using the security money to remove the building, wholly or in pieces, or perhaps by an action in ejectment. Anyway, such right resided in the county, and the county, for its reasons, did not choose to assert it. The main reason seems to be the fact that the Park Commission never went ahead with the proposed parkway. I hold that Westchester County never had or *402 acquired title to the house after its sale, either in its proprietary capacity or in its. governmental function.
By what right, therefore, does the State claim the building for its own? It contends that since Westchester County in its capacity as a public corporation is obligated to turn the lands it acquired for the Parkway over to the State for the public use the State will make of it (the New England Section of the Thruway) without remuneration, with it goes the building which the claimant.had allegedly forfeited for not removing it within the 30 days prescribed in State’s Exhibit A. Such is nonsense. The right Westchester County or the commission had of effecting the removal of the building was waived from the very beginning and it could not be revived without first giving a formal notice by Westchester County to that effect to the claimant which would demand conformance by him within a reasonable period of time, but not less than the 30 days stipulated in State’s Exhibit A. Although it may be accepted that Westchester held this land in its governmental capacity, such did not apply to the house it had sold to the claimant. That house continued to be claimant’s until the positive and formal action afore-mentioned should have been taken by the county. Such action was not taken for all the 26 years claimant held the house before the State took over the Parkway lands.
It-is my opinion that when the State came in, it took the land with all its burdens. The claimant’s house was such burden. That house was no different.from a fixture affixed to the realty. It has been held that, even though such fixture may be held to be personalty between the landlord and tenant, as between the State and the tenant it is a compensable fixture. (Jackson v. State of New York, 213 N. Y. 34; Matter of City of New York [Allen St.], 256 N. Y. 236; Tinnerholm v. State of New York, 15 Misc 2d 311; N. Y. Const., art. I, § 7.)
In all its relations with the claimant, except at the trial, the State itself recognized the claimants ’ rights. In' the notice of appropriation, his name appears as one in interest. By the agreement of adjustment, it dealt with him as the owner. In the letter of Mr. Baldwin, although not approving the amount agreed, for adjustment, claimant is told that he will receive compensation if he will consider his original agreement to remove within 30 days as the basis for his agreement of adjustment. .: This 30-day limitation of tenancy may not be considered here.- It did; not lessen the fair marketable value of the building. So far as the State is concerned, it does not bear upon the issues in the claim. The question to be answered is: what was the value of the house, less the value of the foundation, and less the *403 cost of removal of same? I find it was $12,100. This tenant, as the saying goes, has had it good for 26 years. But this good fortune, which is rare, may not he used by the State as a setoff or a denial of what was his.