43 N.Y.2d 909 (1978)
Anthony A. Castellano et al., Appellants,
v.
State of New York et al., Respondents. (Claim No. 54477.)
Court of Appeals of the State of New York.
Argued November 14, 1977.
Decided February 14, 1978.
Morton N. Wekstein for appellants.
L. Victor Vaccaro for Yonkers Realty Associates, respondent.
Louis J. Lefkowitz, Attorney-General (Vernon Stuart and Ruth Kessler Toch of counsel), for State of New York, respondent.
Judges GABRIELLI, JONES, WACHTLER and COOKE concur in Per Curiam opinion; Chief Judge BREITEL dissents and votes to affirm in a separate opinion in which Judges JASEN and FUCHSBERG concur.
*910 Per Curiam.
In June, 1970, pursuant to sections 30 and 349-c of the Highway Law, the State appropriated a portion of two adjacent parcels in the City of Yonkers in Westchester County. Parcel I was owned in fee by claimants Castellano and leased to Yonkers Realty Associates. The latter owned Parcel II. A building housing an S. Klein Department Store straddled the two parcels. Following the taking: claimants Castellano filed a claim as fee owners of Parcel I (Claim No. 54477); and Yonkers Realty filed two claims, one as lessee of Parcel I (Claim No. 54102) and the other as fee owner of Parcel II (Claim No. 54106). This appeal concerns a dispute between the Castellanos, as fee owners, and Yonkers Realty, as lessee, with respect to amounts awarded for Parcel I.
The Court of Claims denied the State's motion for consolidation of the three claims, but ordered that its motion for a joint trial be granted. Based on a taking of 19,103 ± square feet in Parcel I and permanent and temporary easements, the court found that Parcel I suffered direct and consequential damages amounting to $180,034. In considering how this sum should be apportioned between the owner and lessee, the court rejected the landlords' argument that correction of an alleged typographical error in clause (d) of paragraph 12 of the land lease established that the landlords were entitled to the entire proceeds of the award, concluding that the proof presented was insufficient and further that the court lacked jurisdiction to reform the lease. Instead, the court awarded the Castellanos $16,675, representing their reversionary interest as fee owners and the present worth of the rental loss, and awarded the balance of the damages, approximately $164,000, to lessee Yonkers Realty. These awards were embodied in separate judgments.
Cross appeals were taken to the Appellate Division, which *911 found no error in amount of damages determined or in the result reached in allocating said amount. That court held, however, that the Court of Claims improperly rejected the State's attempt to introduce partial payment agreements into evidence solely for the purpose of proving that there should be a suspension of interest on the amounts stated in said agreements as of 30 days after the State sent closing papers to the claimants pursuant to the agreements. Hence, it modified by reversing so much of the judgments as provided for interest on the awards and remitted the matter for a determination of the question of interest.
The fee owners, the Castellanos, appealed pursuant to CPLR 5601 (subd [d]) from the judgment of the Court of Claims entered following the remittal by the Appellate Division. On this court's own motion, Yonkers Realty Associates was joined to this appeal pursuant to CPLR 1003.
There should be a reversal. It is a fundamental principle that the Court of Claims has jurisdiction, and indeed an obligation, to make an award in compliance with the terms of an agreement between a landlord and a tenant and that in so doing it may exclude one of the parties from part or all of an award to which it might otherwise be entitled (see Traendly v State of New York, 51 AD2d 489, affd 43 N.Y.2d 804; Cooney Bros. v State of New York, 24 N.Y.2d 387; Matter of City of New York [Allen St.], 256 N.Y. 236). In the instant matter, the owners made at least a prima facie case for their entitlement to the award by showing that the use of the word "Lessor" in a part of clause (d) of paragraph 12 of the lease was grammatically inconsistent with the rest of the lease. Further proof was offered, but it is unnecessary to detail it here. The point is that from the outset the case was not capable of proper resolution because of the failure to explore fully how this interpretation of clause (d) of paragraph 12 might affect the allocation of damages.
It was asserted that a reformation of the lease was sought and that the Court of Claims lacked jurisdiction for such an undertaking. The fact is, however, that what was requested was an interpretation rather than what might be characterized as a reformation. To carry out the intention of a contract, words may be transposed, rejected, or supplied, to make its meaning more clear (Bintz v City of Hornell, 268 App Div 742, 747; Potthoff v Safety Armorite Conduit Co., 143 App Div 161, 163; see, also, Long Is. R. R. Co. v Northville Inds. Co., 41 N.Y.2d 455, 463; *912 Castelli v Burns, 156 App Div 200). This was a question of interpretation properly within the jurisdiction of the Court of Claims.
At trial, proof was offered to show what was intended in clause (d) of paragraph 12 of the lease, but the trial court's resolution of this issue was impeded because it assumed that the relief sought was reformation and that the court lacked jurisdiction to grant this remedy. If the court had been of the view that it could substitute one word for another in order to make clear the meaning of the lease, the proof offered may have furnished additional support for the interpretation urged by the Castellanos. To focus on this issue, the case should be remitted for further proceedings so that such proof may be considered in the context of a trial at which the court recognizes that it may determine that the parties intended to use the word "Lessee" in the relevant portion of clause (d) of paragraph 12. The court may thus explore all that may be offered to show what is the proper interpretation of clause (d) of paragraph 12 and how it might relate to the other provisions of the lease. When examining the condemnation clauses, however, the court should be mindful that there may be a distinction between how the award should be judicially allocated and the manner in which the parties have agreed to apply it (see Traendly v State of New York, 43 N.Y.2d 804, supra).
In conclusion, by remitting, this court does not open up or touch upon the judgment in favor of the claim made by Yonkers Realty (Claim No. 54102). Since the State has failed to appeal from the judgment on that claim, this court may not interfere with or disturb that judgment, even if the State is required to pay twice for the same damage. In future cases, to avoid procedural difficulties, ordinarily claims of this sort should be consolidated and, if consolidation is not ordered, to avoid a potential duplication of liability, the State should appeal from all judgments relating to claims in respect to the same property.
Accordingly, the judgment appealed from and the order of the Appellate Division brought up for review should be reversed, without costs, and the case remitted to the Court of Claims for further proceedings in accordance with this opinion with respect to the allocation of damages to claimants-appellants for the property in question.
Chief Judge BREITEL (dissenting).
I dissent and vote to *913 affirm. The trial court's conclusion that it lacked power to reform the lease, even if erroneous, does not require remittal because the court also concluded, correctly, that, aside from any absence of power, there was insufficient proof to support the lessors' contention that the lease contained a typographical error. By implication, inferable from its memorandum, the Appellate Division reached the same conclusion with respect to the insufficiency of the proof. Since the trial court's apportionment of damages, affirmed by the Appellate Division, was in accordance with the terms of the lease, there should be an affirmance.
Determinative of the allocation of the award in eminent domain are, of course, the terms of the lease from the Castellanos, as lessors, to Yonkers, the current lessee (see Matter of City of New York [Allen St.], 256 N.Y. 236, 242-243). Paragraph 12 of the lease deals with the respective rights of the parties in the event of a taking in eminent domain. Clauses (a) and (b) of paragraph 12 refer to the effect on the lease itself of a total or partial taking. It is the next two clauses, (c) and (d), dealing with apportionment of condemnation awards, that are of concern in this litigation.
Clause (c) of paragraph 12 defines the lessee's right to compensation in eminent domain: "(c) It is expressly understood and agreed that no part of any award, however, shall belong to the Lessee except that part of any award relating to the value of the building or buildings taken and Lessee's interest in leasehold if any award is made therefor, less depreciation. No such depreciation shall be deemed to take place during the first two years of this lease. Thereafter, such depreciation shall be conclusively presumed to be at the rate of one (1%) per cent per year and the Lessee's award shall be reduced accordingly. Subject to the foregoing provisions it is expressly agreed that the Lessee shall be entitled to any award made for the building or buildings, and for the Lessee's interest in the leasehold, if any is awarded by the Court." Thus, the lessee is entitled to recover for the value of its leasehold, that is, the capitalized excess of market rental value over the rent reserved, and for the value of the buildings. The language dealing with depreciation provides an adjustment for valuing the buildings, but would have no economic or legal application to valuing the leasehold. A leasehold does not depreciate in the sense that term is normally used; a leasehold's value may decline but the declination *914 is a function of capitalizing the excess of the market rent over the reserved rent for the balance of the lease period.
Clause (d) allocates the remainder of any condemnation award to the lessors: "(d) Awards for the value of the land and the value of the buildings and improvements as of the end of the term herein, and the Lessors' interest in and to the value of its leasehold, if any is awarded, are hereby assigned to the Lessors and they are given complete authority to collect the same." One must note that the reference in clause (d) to the lessors' right to the award for the land, the buildings, and improvements is limited to what they would have received, in the words of the clause, "as of the end of the term" of the lease. On the other hand, the lessee is entitled under clause (c) to the value of its "interest in leasehold"; namely, as stated earlier, the capitalized excess of market rental value over the rent reserved. The lessors are, therefore, entitled to the value of the reversion in the land, building, and improvements, and the value of their interest in the lease, which is limited to the capitalized value of the rent reserved. Thus, clauses (c) and (d), taken together, account for all the value in the property.
The difficulty, if there be difficulty, arises from a single grammatical error in clause (d). The lessors, a group of three brothers, are granted their interest "in and to the value of its leasehold", rather than their leasehold. On this mistake, the lessors' entire case is based. They contend that the linguistic inconsistency resulted not from a grammatical slip, but from a typographical error substituting "lessors" for "lessee". In other words, they interpret the clause to grant to the lessors "the lessee's interest in and to the value of its leasehold."
As principal support for this position, plaintiffs note that nowhere else in the lease was this grammatical error repeated. This absence of repetition of error has little probative force  certainly no more than would a failure to repeat the alleged typographical error.
Aside from the lack of evidence presented, plaintiffs' argument is intrinsically unpersuasive. First, the occasion for the grammatical error involved is easily understood. One need only think of the landlord as a single entity rather than three brothers to see how the error could have been committed. In fact, the very same grammatical error appears in the Court of Claims opinion, referring to the Castellanos' rental loss as "its rental loss." Second, and more important, the change suggested by plaintiffs is not in harmony with the other terms of *915 the lease. Were plaintiffs' contention accepted, clause (c) would award the value of the lessee's interest in the leasehold to the lessee, and clause (d) would award that same interest to the lessor.
It is true that grammatical construction is often a "reliable signpost" in discovering the intention of the parties. But it is also true that "[a]t times the language of a contract, read as a whole * * * may disclose an intention which would be thwarted by a strict grammatical construction. We refuse to follow a signpost when it appears that it points in the wrong direction." (Wirth & Hamid Fair Booking v Wirth, 265 N.Y. 214, 219 [LEHMAN, J.].) In this case, the lessors' grammatical argument places undue emphasis on a single phrase, rather than reading that phrase as it must be read, in the context of the writing as a whole (see Empire Props. Corp. v Manufacturers Trust Co., 288 N.Y. 242, 248).
Thus, the trial court made no error in finding plaintiffs' proof insufficient to support the contention of typographical error. It matters not that the court also concluded, independently, and erroneously, that it lacked power to correct such an error. That error does not affect the finding on sufficiency of proof. The trial court had a full record before it, without exclusion of any material proof proffered by plaintiffs. The proof consisted almost exclusively of opinions elicited or sought to be elicited on cross-examination of the witnesses for Yonkers and a lawyer witness for the Castellanos who gave his opinion as an expert with respect to the existing language of the condemnation clause. There is no reason to believe that a new trial would produce any additional evidence on this point. In the absence of the exclusion of other admissible evidence offered, and there was none, a pure question of law is presented which can be and should be resolved by this court.
What remains is to consider the Court of Claims' distribution of the condemnation award in light of the lease terms. The lessors, the Castellanos, were awarded the value of their reversionary interest, together with "the present worth of its rental loss" (meaning "their" rental loss) under the lease. This is precisely the amount to which they were entitled under clause (d) of paragraph 12 of the lease, as developed above. Hence the court's apportionment of the award was correct.
Moreover, substantial economic justice, a factor important and, arguably, determinative of the grammatical error, supports the result reached by the Court of Claims. The significant *916 economic cause of the controversy is, of course, the large increase in the value of the property since the lease was first made in 1958. The land value of the entire Castellano parcel, before the taking, as found by the trial court, was about 2.5 million dollars. Yet, the rent reserved under the Castellano lease at the time of the taking was only $30,000 per year. Hence, the lease terms had become quite unfavorable to the Castellanos. Of course, the courts are and should be powerless to correct an intentional bargain which turns out to be unfavorable for one side, as it might have turned out for the other side.
Once the value of Yonkers' leasehold interest is subtracted, the Castellanos' fee interest in property subject to a 102-year lease, with 90 years of the term remaining, is not very valuable. An award for more than loss of the rent reserved under the lease and the reversion interest would significantly overcompensate the Castellanos.
In summary, the award was apportioned as the lease provides explicitly; the apportionment is in accord with the economic sense of the transaction; and there is no ambiguity in the lease requiring construction or interpretation beyond the obvious change from a singular to a plural possessive adjective. Most important, the trial revealed no proof or offer of proof by the lessors to establish their unlikely contention. The issue gave no trouble to the courts below and it is strange that it gives trouble to this court.
Accordingly, the judgment appealed from and the order of the Appellate Division brought up for review should be affirmed.
Judgment appealed from and order of the Appellate Division brought up for review reversed, without costs, and the case remitted to the Court of Claims for further proceedings in accordance with the opinion herein.