AYRES, Judge.
This is an action for the expropriation of property for highway purposes pursuant to the provisions of LSA-R.S. 48:441 et seq.
The Illinois Central Railroad Company, hereinafter referred to as Illinois Central, owned a tract or parcel of land at the intersection of DeSiard and South Sixth Streets in the City of Monroe. Rose Oil Company of Monroe, Inc., hereinafter referred to as Rose Oil, held a lease on a portion of this property. The State, through the Department of Highways, expropriated a portion of Illinois Central’s property; however, only a part of the property leased to Rose Oil was taken by the expropriation.
Located on the leased premises were buildings and other improvements erected by the lessee. Under the terms of the lease, the lessee agreed to remove these constructions at the termination of the lease. If not so removed, they would, at the election of the lessor, become its property, or the lessor could have them removed at the lessee’s expense.
Under the petition and the order of expropriation, Rose Oil’s lease was expropriated insofar as it affected the property *821 taken, except “lessee’s right to remove its buildings and improvements” which were not included in the taking.
The initial appraisal of the property for the State included its value with the improvements and damages to the adjoining property and the improvements thereon. By a subsequent reappraisal, the property was valued only as to the land taken and the severance damages determined only as to Illinois Central’s remaining land.
Rose Oil filed several exceptions and pleas which had for their primary purpose the raising of questions as to whether the taking was violative of Art. I, Secs. 2 and 6; Art. IV, Sec. 15; and Art. VI, Sec. 19.1 of the Constitution of Louisiana and the Fourteenth Amendment to the Constitution of the United States.' These exceptions and pleas were overruled by the late Judge Lea S. Thompson, who concluded that the validity of the exceptions and pleas was dependent upon a determination of the status of the improvements, whether movable or immovable, which determination, he concluded, was one of fact to be resolved on the trial of the case on its merits.
It was, however, stipulated in accordance with the subsequent appraisal that “The deposit of $11,535 was made for land taken and damages to remaining land, which amount is acceptable as just compensation to defendant Illinois Central Railroad Company and which amount may be confirmed by the Court in its final judgment,
The case was submitted to the trial court on its merits under a stipulation to which was affixed a copy of the lease and which set forth that (1) at the time of the taking, Rose Oil was a lessee of a portion of the property expropriated; (2) the improvements placed on the property by Rose Oil were partially situated on the expropriated land and consisted primarily of a masonry service station building with concrete foundations and appurtenances thereto; (3) the value of Rose Oil’s improvements on the property taken and damages to its improvements on the remainder of the leased premises were $10,000; and (4) the sole remaining issue was whether plaintiff must expropriate and pay for the improvements owned by Rose Oil, located on the land expropriated, and pay damages resulting to those improvements on the adjoining leased property.
After trial, judgment was rendered in favor of Illinois Central for the sum of $11,535, which it accepted in full settlement of its claim. The demands of the defendant Rose Oil for the value of its improvements situated on the expropriated land and damages to those improvements on the remaining leased premises were rejected, and from that judgment Rose Oil appealed.
It is urged that the trial court erred (1) in holding that the agreement between the Illinois Central and Rose Oil with respect to the buildings inured to the benefit of the State as a condemning authority and (2) in holding that the aforesaid constitutional provisions of the Constitution of this State and of the Constitution of the United States do not require the State to pay for the loss and damages sustained by Rose Oil by reason of the expropriation.
It appears appropriate to first point out that in this action Rose Oil makes no claim with respect to a leasehold interest or advantage. The question is whether the expropriating authority must expropriate and pay for improvements of Rose Oil located on the land expropriated and must pay for damages to those improvements of Rose Oil located on that portion of the leased premises not expropriated.
The terms of the lease which provide that the lessee may remove improvements placed by him on the leased premises are consistent with and in accord with the provisions of LSA-C.C. Art. 2726 and add nothing to its terms, which are:
“The lessee has a right to remove the improvements and additions which he has made to the thing let, provided he *822 leaves it in the state in which he received it.
“But if these additions be made with lime and cement, the lessor may retain them, on paying a fair price.”
In either instance, the lessee owns the improvements even though the lease is silent as to the ownership of the improvements.
We have been cited no constitutional or statutory authority warranting a deviation from the general rule that the right of a lessee to remove improvements placed by him on leased premises does not inure to the benefit of an expropriating authority. However, we find this comment in 27 Am.Jur.2d, “Eminent Domain,” Sec. 292, pp. 99-100:
“If, as against the lessor, the lessee has the right, prior to or upon the expiration of his term, to remove fixtures, structures, or other improvements installed or erected by him upon the property taken, he is, generally speaking, entitled to be compensated for such improvements.
“The right of the tenant to remove buildings or fixtures becomes material in apportioning a condemnation award between landlord and tenant. Ordinarily, however, an agreement between landlord and tenant that the tenant shall have the right to remove improvements placed on the premises by him does not inure to the benefit of the condemnor so as to authorize the taking of a beneficial use of the property from the tenant without making him a fair compensation for the property as a whole.”
In an annotation from 3 A.L.R.2d 286, the following comments appear pertinent:
“Generally speaking, a lessee is entitled to compensation for fixtures, structures, or other improvements installed or erected by him upon property taken under eminent domain, if, as against the lessor, he has the right to remove such improvements . . . .” (Page 302, Sec. 8.)
“The view has been taken that fixtures or other improvements affixed by a lessee to the premises in such a manner that they would have become a part of the realty if they had been installed by the owner of the fee must be treated as a part of the realty upon a condemnation of the premises, and the lessee, assuming that as against the lessor he has the right of removal, awarded compensation therefor, notwithstanding the fact that as between the lessor and the lessee the improvements were regarded as personalty.” (Page 307, Sec. 10.)
The relationship of the parties here is not that of lessor-lessee, or vendor-vendee, but condemnor-condemnee, and, as was observed In Re New York, 118 App.Div. 865, 103 N.Y.S. 908 (1907):
“The city is not the landlord, and as against the tenant, has not acquired the landlord’s rights, but is taking this property against the wish of both the landlord and the tenant for its own purposes.
The condemnor does not succeed the owner as lessor for, on the taking, the lease, at least as to the portion of the premises taken, is terminated. See LSA-C.C. Art. 2697, which declares:
“If, during the lease, the thing be totally destroyed by an unforseen [unforeseen] event, or it be taken for a purpose of public utility, the lease is at an end. If it be only destroyed in part, the lessee may either demand a diminution of the price, or a revocation of the lease. In neither case has he any claim of damages.”
In United States v. Seagren, 60 App.D. C. 183, 50 F.2d 333, 334 (1931), the pertinent facts were, for practical purposes, identical with those of the instant case. There it was stated:
“At the time the proceedings were instituted, and long prior thereto, these lots *823 were owned by the Saegmuller family, but leased to Seagren, appellee here, and hereafter referred to as the tenant, who built and conducted thereon a gasoline filling station on a large scale, with the usual equipment of such an establishment, consisting mainly of two small fireproof houses; a work shop; divers tanks for gasoline and oil three feet underground, with the pipes, pumps, and other paraphernalia for operation, the property being covered with a concrete surface or roadway and inclosed by an iron fence five feet in height.”
Seagren, as Rose Oil here, made no claim for a lease advantage.
“But he did assert a right to the reasonable value of his structures upon and within the land taken, the United States contesting such claim on the ground that the tenant’s right of removal, reserved in the lease as against the landlord, precluded his recovery in condemnation as against the United States. * * *
“The landlord disclaiming any right or interest in the tenant’s structures, the issue was considered and decided by the court as between the United States and the tenant.
“The question thus becomes whether or not this private stipulation for removal between the landlord and the tenant inures to the benefit of the government when condemning the estates of both? [sic] Can the United States, exercising its right of eminent domain, change the essential character of structures from realty, which it must pay for, to personalty, which it may order removed without payment, because a landlord and tenant, dealing upon private considerations of reciprocal interest and expenditure, have years before agreed as between themselves that upon their termination of their lease the tenant might remove his structures?” (50 F.2d 333, 334-335.)
The United States Court of Appeals for the D. C. Circuit rejected the contention of the United States and affirmed the judgment of the trial court, awarding lessee compensation for the improvements on the leased premises.
Nichols, “Eminent Domain,” Third Edition, Vol. 2, Sec. 5.81 [2], makes this observation :
“It frequently happens that, in the case of a lease for a long term of years, the tenant erects buildings upon the leased land or puts fixtures into the building for his own use. It is well settled that, even if the buildings or fixtures are attached to the real estate and would pass with a conveyance of the land, as between landlord and tenant they remain personal property, and, in the absence of a special agreement to the contrary, may be removed by the tenant at any time during the continuation of the lease provided such removal may be made without injury to the freehold. This rule is, however, entirely, for the protection of the tenant and cannot he invoked by the condemning party. If the buildings or fixtures are attached to the real estate, they must be treated as real estate in determining the total award, btit in apportioning the award they are treated as personal property and credited to the tenant. A tenant is not, however, entitled to recover for buildings or other property not attached to the realty.” (Emphasis supplied.)
The rule in this State is that:
“Lands and buildings or other constructions, whether they have their foundations in the soil or not, are immovable by their nature.” LSA-C.C. Art. 464.
This designation applies although the improvements were constructed by a person other than the owner and belong to the former. As pointed out by Professor A. N. Yiannopoulos in “Movables and Immov-ables in Louisiana and Comparative Law,” 22 La.L.Rev. 517, 523-524:
“Louisiana courts, apparently proceeding on the assumption that ownership of *824 immovables was not susceptible of horizontal division, felt compelled in certain instances, in order to avoid inequitable results, to admit that buildings erected on leased ground could be treated as movables. In other instances, however, Louisiana courts seemed to indicate that buildings are always immovables and insusceptible of separate ownership or other real rights. Gradually, the original assumption became forgotten, and courts, although granting the proposition that buildings are always immovables, seemed to indicate the possibility of separate ownership. . . . ” (Emphasis supplied.)
Both statutory and jurisprudential rules recognize and affirm the principle. For instance, LSA-C.C. Art. 3249, relating to privileges on immovables, recognizes that the privilege of the furnisher of materials attaches to buildings placed on a lot by a lessee. LSA-R.S. 9:5102 authorizes the mortgage of a lease of real property and the interest of the lessee in any buildings, constructions, and improvements on the leased premises. It also provides that the mortgage shall not affect third persons until recorded in the manner provided by law for the recordation of conventional mortgages upon real property.
In Buchler v. Fourroux, 193 La. 445, 190 So. 640, 642 (1939), the constitutionality of Act 198 of 1918, relating to chattel mortgages, was questioned on the ground that. the body of the Act went beyond the title. The pertinent part of the title reads: “An Act To grant the right to mortgage movable property;....” In Section 1 were enumerated the various movables which could be mortgaged, and included among them were buildings on leased ground. On rehearing the court held that the Act was unconstitutional in that the body of the Act went beyond the title, holding that buildings on leased ground were immovables and that, in order to make such buildings movables, the title of the Act would have to contain a provision to that effect. The court observed in 190 So. 640, 650:
“ . • • If it was the purpose of the Act to change the status of the immovable property, it would be necessary that there be some declaration in the Act to the effect that the immovable property is deimmobilized. If we were to view the Act in the light that it repealed Article 464 of the Civil Code and changed the status of the property, the Act would be unconstitutional because it would embrace more than one object. In addition to granting the right to mortgage movable property, the Act would change the status of immovable property, and in effect, repeal Article 464 of the Civil Code.
“The Act is unconstitutional insofar as it applies to buildings on leased ground because the title is not sufficiently broad to include the mortgaging of immova-bles.”
In the cited case, the lessee built buildings on property that was subsequently mortgaged by the owner. However, prior to the conventional mortgage, a chattel mortgage on the buildings had been granted to the plaintiff. The intervenor held the conventional mortgage. The lease was not recorded. And, as was said by Chief Justice O’Niell in his concurring opinion on rehearing (190 So. 651) :
“ . . . The classification of ‘buildings on leased ground’, as immovable by nature, is so well established by the provisions of the Civil Code and the decisions on the subject that it would require an express declaration by statute to change the classification. I concur in the opinion, therefore, that this statute is violative of section 16 of Article III of the Constitution, in so far as it provides for giving a chattel mortgage on ‘buildings on leased ground.’ ”
 The reasoning is sound that just as the mortgage of a tract or parcel of *825 ground includes the buildings and improvements thereon so must the expropriation of a lot or parcel of ground include the buildings and improvements thereon. Similarly, buildings and structures erected by a tenant on leased premises constitute such an integral part of the lease that they must be treated as part and parcel thereof when the lease is expropriated.
The Louisiana Constitution of 1921, as amended through Art. 1, Sec. 2, provides:
“No person shall be deprived of life, liberty or property, except by due process of law. Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid.” (Emphasis supplied.)
Art. 1, Sec. 6 provides:
“All courts shall be open, and every person for injury done him in his rights, lands, goods, person or reputation shall have adequate remedy by due process of law and justice administered without denial, partiality or unreasonable delay.”
And Art. 4, Sec. 15:
“No ex-post facto law, nor any law impairing the obligation of contracts, shall be passed; nor shall vested rights be divested, unless for purposes of piiblic utility, and for jiist and adequate compensation previously paid.” (Emphasis supplied.)
Art. 6, Sec. 19.1 of the Louisiana Constitution was adopted to permit the enactment by the Legislature of a quick-taking statute such as the one under which the State brought this action. State, Through Department of Highways v. Ma-caluso, 235 La. 1019, 106 So.2d 455 (1958). Neither this provision of the Constitution nor the enabling acts adopted pursuant thereto alters the other constitutional provisions with respect to the payment of compensation for property expropriated or damages occasioned by the taking.
Despite these clearly stated and often-repeated constitutional provisions, the State, through the Department of Highways, contends that the aforementioned principles of law are not the rule of law in this State. Cited as authority for this is In Re Morgan R. R. & S. S. Co., 32 La.Ann. 371 (1880). That case, in our opinion, is not applicable either to the facts or the issues presented for resolution in the instant case. First, In Re Morgan primarily concerns a question of a leasehold interest or advantage of the lessee. No such question or issue is involved here. Secondly, the expropriation in the cited case was predicated upon provisions of the Constitution of 1868 which, unlike the provisions of the present Constitution or that of 1879, did not provide for the payment of damages occasioned by the taking of property through expropriation proceedings. Although the opinion does not disclose the date the proceedings in the cited case were instituted, we may point out that the Constitution of 1879 was adopted on the first Tuesday in December of that year. The judgment rendered in the trial court was appealed and was lodged in the Supreme Court and there argued and submitted in time for the Supreme Court to render its opinion in March, 1880. Therefore, the expropriation must have occurred prior to the adoption of the Constitution of 1879. Inasmuch as the Constitution of 1879 was the first to contain provisions with respect to the payment of damages in addition to compensation for the property taken, the question of special damages was not considered in the Morgan case. The lessee was awarded only the amount of the leasehold interest or advantage, that is, the difference between the rent contracted to be paid and the value of the lease on the date of the expropriation.
As was stated in Columbia Gulf Transmission Company v. Hoyt, 252 La. 921, 215 So.2d 114, 120 (1968) :
“The constitutional designation private property is restricted to no particular type of private property. It is sufficiently broad, in our opinion, to include *826 leases, though lease rights may be classified as personal in the structuring of our codal system.
“It would have been an odd circumstance had predial lease rights, granting to a lessee the enjoyment of land and often quite valuable, been omitted from the constitutional safeguard to just compensation. The jurisprudence, however, leaves no doubt that for many years predial leases have been classified as compensable rights in land expropriations. See Municipality No. Two, For Opening Euphrosine Street, 7 La.Ann. 72 (1852).”
In Arkansas La. Gas Co. v. La. Depart, of Highways, 104 So.2d 204, 206-207 (La. App., 2d Cir. 1958 — writ denied), plaintiff was directed to relocate and encase its gas pipeline in connection with the widening of U. S. Highway 80. This court, through the opinion of the late George W. Hardy, Jr., presiding judge of this court, recognized plaintiff’s constitutional rights:
“Plaintiff predicates its asserted right of recovery of the amount here involved upon the contention that its right-of-way or servitude constitutes property which, in effect, has been appropriated for a public purpose and for which appropriation it is entitled to be compensated under constitutional provisions, both State and Federal.
“The principle that a right-of-way, whether denominated as easement or servitude, is property and that damage to its free use by the owners thereof amounts to a taking of property, is too well established to admit of question. The right of servitude as a form of incorporeal property is specifically defined by Article 460 of the LSA-Civil Code. The taking of or the interference with the use of an easement or servitude entitles the owner to compensation; Panhandle Eastern Pipe Line Co. v. State Highway Commission of Kansas, 294 U. S. 613, 55 S.Ct. 563, 79 L.Ed. 1090; Town of Eunice v. Louisiana Western Railway Co., 135 La. 882, 66 So. 257; City of Shreveport v. Texas & Pacific Railway Co., 182 La. 36, 161 So. 12; United States v. Welch, 217 U.S. 333, 30 S.Ct. 527, 54 L.Ed. 787; cf. 29 C.J.S. verbo Eminent Domain § 105; 18 Amer. Jur. verbo ‘Eminent Domain’, Section 156.
“Equally obvious and conclusive are the constitutional prohibitions against the taking of property without payment of compensation embodied in Article 1, Section 2 of the LSA-Constitution of 1921, and the Fourteenth Amendment to the Constitution of the United States.”
Plaintiff was, thus, held entitled to compensation for relocating its pipeline. The same constitutional guarantees, in our opinion, afford relief, in the instant case, to the lessee, Rose Oil.
Because the improvements erected and owned by lessee were of masonry, asphalt, and concrete construction, an order of removal is tantamount to and effectively results in a destruction of the improvements. The taking of these improvements through expropriation or their destruction without compensation to their owner violates the constitutional prohibition against the taking or damaging of private property without just and adequate compensation.
For the foregoing reasons, we are of the opinion that (1) buildings and other improvements placed on property by a lessee are immovable by nature, even though the lessee has a right, or may be required, to remove them; (2) where such improvements are of masonry, concrete, and asphalt construction, the requirement that they be removed is in effect a decree directing their destruction; (3) in expropriating a predial lease, the improvements and other constructions placed thereon by a lessee constitute an integral part of the lease and should properly be included in the taking; compensation should accordingly be awarded for their value, as well as for damages sustained by improvements *827 erected by the lessee on the leased premises, but on land not included in the expropriation; (4) it is not only inequitable to permit the expropriation of a naked lease without the payment of compensation for the improvements taken or destroyed or damages resulting from the expropriation as undertaken in this instance, but also a violation of the constitutional guarantee against the taking or damaging of private property for public purposes without compensation; and (5) whether lessee’s improvements are expropriated or lessee be required to remove and, in effect, destroy them, the result is the same; the lessee is entitled to an award of their value.
As heretofore noted, the value of lessee’s property on the expropriated premises and the damage to lessee’s improvements on the portion of the premises not expropriated was stipulated in the sum of $10,000. For this amount, we conclude the lessee should have judgment.
For the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; and
It is now ordered, adjudged, and decreed that Rose Oil Company of Monroe, Inc., have and recover judgment against the State of Louisiana, through the Department of Highways, for the full sum of $10,000, with interest at the rate of 5% per annum, from July 1, 1969 (date title to the property vested in plaintiff), until paid (LSA-R.S. 48:455), and for such costs as are assessable against it.
It is further ordered, adjudged, and decreed that the State of Louisiana, through the Department of Highways, deposit, in accordance with law, the aforesaid amount of principal, interest, and costs in the registry of the Fourth Judicial District Court in and for Quachita Parish, Louisiana, in satisfaction of the judgment herein rendered.
Reversed and rendered.