OPINION OF THE COURT
 

 Jasen, J.
 

 The issue raised by this appeal is whether the claimants, tenants pursuant to a short-term lease on land owned by the City of New York (City), are entitled to compensation for trade fixtures annexed thereto when the property is subsequently condemned by the City.
 

 Claimants operated an amusement park on land located in Queens County which the Board of Estimate of the City of New York determined should be taken by the City as part of the College Point Industrial Park Urban Renewal Project.
 
 (Matter of City of New York [Glantz],
 
 55 NY2d 345 [decided herewith].) The amusement park was bordered on the north by City-owned land: a dry creekbed and property acquired in a 1955 tax foreclosure proceeding. To the east lay the Whitestone Expressway; and to the south and west there was residential property. Patrons of the amusement park used those nearby residential streets for parking,
 
 *357
 
 causing some traffic problems. In order to alleviate these parking problems, claimant MHG Corporation negotiated with the City of New York to lease the City-owned land north of the amusement park.
 

 The lease specified that the land be used for “no charge parking” and that it be left in the same condition at the end of the lease as whén the tenant took possession. The term of the lease was 30 days, but it was provided that it would renew automatically until one of the parties gave 30 days notice. By the terms of the lease MHG Corporation agreed not to “[m]ake any improvements or alterations without the prior written consent of [the] landlord” and agreed that “[a]ll improvements [made would] become the property of the [landlord on annexation.” Furthermore, MHG Corporation agreed not to sublet the whole or any part of the leased property. There was also a condemnation clause in the lease by which the tenant agreed that the landlord could recover possession pursuant to a condemnation proceeding.
 

 In November, 1972, the City of New York, pursuant to its powers of eminent, domain (New York City Charter, §§ 8, 228, 381) petitioned in Supreme Court, Queens County, to condemn “all the real property (not presently owned by the City) in the * * * area” designated by the Board of Estimate for the College Point Industrial Park. The petition, which was granted December 1, 1972, gave detailed descriptions of the property condemned. According to those descriptions, the City-owned property which was leased at this time to MHG Corporation was condemned in this proceeding.
 
 [1]
 
 Both courts below found that the claimants were tenants in possession pursuant to a valid lease when title vested with the City on December 1,1972; thus,, the question of the claimant’s status is not before this court for review. (Cohen and Karger, Powers of the New York Court of Appeals, §§ 109-113.) Pursuant to the order granting the condemnation petition, Supreme Court retained jurisdiction to determine the compensation to be paid to the owners of the property condemned.
 

 
 *358
 
 MHG Corporation and various other parties to whom MHG Corporation had sublet portions of the leased property sought compensation for trade fixtures installed on the leased property. The trade fixtures claimants sought compensation for were amusement rides installed on the leased property as part of an expansion of the adjacent amusement park. There is an affirmed finding of fact that these rides were permanently annexed to the leased property and that they did constitute trade fixtures.
 
 (McRea v Central Nat. Bank of Troy,
 
 66 NY 489.) Thus, the legal question raised by this appeal is limited to whether or not claimants who annexed these trade fixtures to leased land are entitled to compensation when the City exercises its power of eminent domain over the existing property interests.
 

 Supreme Court, despite its factual determinations, awarded no compensation to the claimants. Instead, it held that “claimants took a calculated risk when they installed their rides with knowledge of the impending condemnation and that their monthly tenancy was subject to cancellation on 30 days notice. Claimants gambled that they would be permitted to retain their rides as part of the over-all development of the Industrial Park * * * Claimants lost the gamble.”
 
 [2]
 
 The Trial Judge did, however, determine the sound value of the fixtures in the event the Appellate Division held that compensation was required.
 

 Claimants appealed from so much of the partial final decree of Supreme Court as denied them compensation for their fixtures. The Appellate Division ordered the decree modified to allow claimants an award for their trade fixtures in the amounts determined by the Trial Judge. In so deciding, the Appellate Division stated that “the ‘gamble theory’ upon which Mr. Justice Castaldi predicated his denial of compensation for fixtures has no basis in law.” In the opinion of the Appellate Division, these rides were
 
 *359
 
 “trade fixtures duly installed and utilized upon the city-owned land pursuant to a valid lease and that any impropriety in such use was either expressly approved of by the city or silently and knowledgeably acquiesced in. As trade fixtures installed upon land duly condemned, they became the property of the City of New York on the date of vesting. Accordingly, the claimants must be compensated for their losses”. (82 AD2d 829.)
 

 We now reverse the order of the Appellate Division insofar as appealed from and reinstate the first decretal paragraph of the second, separate and partial final decree of the Supreme Court, Queens County, which awarded claimants no compensation for the trade fixtures installed on the described property. We do so, however, on the basis of a different rationale from that stated in the opinion at Supreme Court.
 

 The general rule is “when leased realty is taken under eminent domain, the tenant is entitled to compensation for fixtures which he has attached if they are condemned with the realty, as long as he otherwise would have been entitled to remove such fixtures at the end of the tenancy.” (Schoschinski, American Law of Landlord and Tenant, § 5:33; see, e.g.,
 
 Matter of City of New York [Allen
 
 St.], 256 NY 236;
 
 Matter of City of New York [Whitlock
 
 Ave.], 278 NY 276, 281;
 
 United States v 1.357 Acres of Land,
 
 308 F2d 200; 2 Nichols, Eminent Domain [3d ed], § 5.83 [2].)
 

 The law of fixtures in eminent domain proceedings “was evolved by the judiciary in order to ameliorate the harsh result to those who substantially improved property but who had less than a fee interest.”
 
 (Rose v State of New York,
 
 24 NY2d 80, 85.) This rule is not unique to New York State.
 
 (Matter of City of New York,
 
 192 NY 295.) The Supreme Cout has similarly held that a “tenant whose occupancy is taken [by the sovereign] is entitled to compensation for destruction, damage or depreciation in value” including compensation for trade fixtures installed on that property.
 
 (United States v. General Motors Corp.,
 
 323 US 373, 384.)
 

 A tenant’s right to compensation for fixtures installed on the leasehold exists despite provisions in the lease which
 
 *360
 
 terminate the lease in the event of a condemnation. Such provisions have been interpreted as “an agreement between landlord and tenant that the tenant shall receive out of the award no compensation for his leasehold interest. Even so, the tenant retains the right to compensation for his interest in any annexation to the real property which but for the fact that the real property has been taken, he would have had the right to remove at the end of his lease.”
 
 (Matter of City of New York [Allen
 
 St.], 256 NY 236, 243,
 
 supra.)
 

 Similarly, lease provisions which give the tenant the right to remove all annexations at the expiration of the. lease do not affect the tenant’s right to compensation for trade fixtures. Such provisions indicate only that as between landlord and tenant the trade fixtures remain personalty; those provisions do not govern the status of the trade fixtures in relation to the sovereign.
 
 (Poillon v Gerry,
 
 179 NY 14;
 
 Matter of City of New York [Allen
 
 St.], 256 NY 236,
 
 supra; United States v General Motors Corp.,
 
 323 US 373,
 
 supra.)
 
 The court, in determining the appropriate compensation for the taking, looks only to the status of the property when it is taken by the sovereign. Thus, the sovereign must compensate the owner of the trade fixtures when as a result of the condemnation it “has taken the real property together with the annexations to this property * * * The city must pay the value of what it takes. To the extent that the value of the real property as a whole is enhanced by fixtures annexed thereto, the value of the fixtures must be included in what the city pays, and the tenant is entitled to part of the award, not because the fixtures added to the value of the leasehold, but because they belonged to him and their value enters into the value of what the city has taken.”
 
 (Matter of City of New York [Allen St.],
 
 256 NY 236, 249,
 
 supra.)
 

 In
 
 Matter of City of New York (Allen St.),
 
 the court thus awarded compensation to the tenant for trade fixtures he had installed even though at the termination of the lease he would have been entitled to remove those fixtures and even though the lease would have expired within a few months of the condemnation. The court in so holding noted that to consider whether the parties would have renewed
 
 *361
 
 the lease or whether the tenant would have exercised his right to removal was pure speculation which did not concern the court. Rather, the court’s only concern was as to the character of the property at the time of taking — that is, what property interests existed and who held title to such interests.
 

 In the present case, the real property condemned-was owned by the City of New York and leased to the claimants. A leasehold interest is, however, considered real property for the purpose of condemnation under the provisions of the Administrative Code of the City of New York. (§ B15-1.0.) Thus, at the time of taking, an owner of a leasehold interest is entitled to compensation for the value of his leasehold and an owner of trade fixtures installed on the property subject to the leasehold is entitled to compensation for the value of those fixtures. This rule of law applies regardless of whether or not the owner of the fixtures is also the owner of the fee.
 

 The owner of the trade fixtures in question at the date title vested with the City was the City of New York. By the terms of the lease, “[a]ll improvements [made would] become the property of the landlord [City] on annexation.” Both courts below found that the trade fixtures claimants seek to be compensated for were permanently annexed to this property and were installed prior to the date of condemnation. Thus, under the terms of the lease, there can be no question but that as of the date title vested with the City pursuant to the condemnation petition the fixtures were the property of the landlord. Claimants are thus not entitled to any compensation for these trade fixtures.
 

 It should be noted that this case differs from
 
 Matter of City of New York (Allen St.)
 
 (256 NY 236,
 
 supra)
 
 solely because of the terms of the lease. In the
 
 Allen St.
 
 case, the tenant was the owner of the fixtures at least until the end of the. lease when it would be clear whether or not he removed those fixtures. Since the condemnation occurred prior to the expiration of the lease in that case, the tenant was the owner of the fixtures at the time title vested with the condemnor. In this case, by the terms of the lease, the City, as landlord, became the owner of the fixtures at the
 
 *362
 
 time the fixtures were annexed to the leasehold. Since the condemnation occurred subsequently to the annexation of the fixtures, the City was the owner of the fixtures on the date title vested with the condemnor. As held in
 
 Matter of City of New York (Allen St.) (supra),
 
 it is the owner of the fixtures on the title vesting date who is entitled to compensation for those fixtures. In the
 
 Allen St.
 
 case, that party was the tenant; in this case, pursuant to the terms of the lease, it is the landlord.
 

 Furthermore, we find nothing unconscionable about these lease provisions.
 
 (United States v Certain Props.,
 
 306 F2d 439, 451-453.) This lease was negotiated at arm’s length. The tenant professed a desire to rent the property solely to resolve a parking problem and the lease clearly limited the use of the property to no-charge parking. The City cannot be faulted for using this land by leasing it to the claimants. By leasing it, the City alleviated a hazard in the neighborhood, helped an adjacent landowner and made the property somewhat productive pending the development of the College Point Industrial Park. Since the City was formulating plans to develop the Industrial Park on this site, it was not unreasonable to include such restrictions in the lease in anticipation of future condemnation proceedings.
 

 Claimants do not allege that the terms of the lease were ever changed or that the City ever gave its written permission as required by the lease for the expansion of the amusement park. Instead, they argue that because the City was aware of the unauthorized expansion of the amusement park, it is now estopped from relying on the terms of the lease. We find this argument to be without merit. No proof was entered that the terms of the lease were changed or that the City agreed to the expansion of the amusement park.
 

 It cannot be said that the conduct of the City was such as to now estop it from relying on the terms of the lease.
 
 (Matter of Hamptons Hosp. & Med. Center v Moore,
 
 52 NY2d 88.) Even the City’s action in increasing the rent after it was discovered that amusement rides had been installed cannot be construed as anything more than a
 
 *363
 
 reflection of the increased value of the land. The value was increased precisely because the City, as landlord, pursuant to the terms of this lease, was entitled to retain the property as improved. In no way can the rental advice form which adjusted the rental provision of the lease be read to affect any of the other provisions of the lease.
 

 Similarly, it cannot be said that by granting the expanded park a license to operate, albeit pursuant to court order, the City altered the terms of the lease. The license merely certified that the rides, as installed, were safe. By granting the license, the City did not agree to any change in the terms of the lease, particularly as to ownership of the property annexed to the leasehold.
 

 Claimants having freely agreed to the restrictions of the lease cannot now be heard to complain because their violation of the lease did not inure to their profit. “[I]t is the duty of the State, in the conduct of the inquest by which the compensation is ascertained, to see that it is just, not merely to the individual whose property is taken, but to the public which is to pay for it.”
 
 (Searl v School Dist., Lake County,
 
 133 US 553, 562.) We would be remiss in our duty to the public were we to ignore the clear terms of the lease and award claimants compensation for fixtures not owned by them at the time of condemnation.
 

 Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed and the first decretal paragraph of the second separate and partial final decree of the Supreme Court, Queens County, dated October 25, 1976, should be reinstated.
 

 Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
 

 Order, insofar as appealed from, reversed, with costs, and the first decretal paragraph of the second separate and partial final decree of Supreme Court, Queens County, reinstated.
 

 [1]
 

 . The City indicates only that it included property it owned in the condemnation petition in order to clear title to that property. There is no explanation offered as to why the general language of the petition excludes land already owned by the City, while the specific language of the petition includes the property owned by the City.
 

 [2]
 

 . It would, of course, have been possible for the City to terminate the lease on 30 days’ notice and to have required the tenants to have removed all the fixtures. The City offers no explanation why it did not do so, except for stating that the condemnation proceeding cleared title to the property. Had the City taken this simple step of terminating the lease, it is conceivable that this entire litigation could have been avoided.