■ In the Matter of QUEENS WEST DEVELOPMENT CORPORATION, Respondent. NIXBOT REALTY ASSOCIATES et al., Appellants. [995 NYS2d 83]—

In a condemnation proceeding, the claimants Nixbot Realty Associates and Tennisport, Inc., appeal from an order of the

Supreme Court, Queens County (Rios, J.), entered October 16, 2012, which granted the petitioner's motion for summary judgment dismissing the claim of Tennisport, Inc., for compensation for the taking of its trade fixtures, and directed that an advance payment made on March 14, 2003, to Tennisport, Inc., with respect to that compensation be set off against the award for compensation for the taking of the fee, and the claimants Martin Nixdorf, Matthias Nixdorf, Renate Nixdorf, and Estate of Michael Nixdorf separately appeal, as limited by their brief, from so much of the same order as directed that the advance payment to Tennisport, Inc., be set off against the award representing compensation for the taking of the fee.

Ordered that the order is reversed, on the law, with one bill of costs to the appellants appearing separately and filing separate briefs, and the petitioner's motion for summary judgment dismissing the claim of Tennisport, Inc., for compensation for the taking of its trade fixtures is denied.

In 1973, tennis professional Fred Botur leased land in the Long Island City section of Queens (hereinafter the subject property) from New York News, Inc. (hereinafter NYN), and opened a tennis club on the subject property. Botur incorporated the club as Tennisport, Inc. (hereinafter Tennisport), and was the sole owner of that corporation. In 1979, Botur and his business partner, Heinz Nixdorf, purchased the subject property, and formed Botnix Realty Corporation (hereinafter Botnix) to hold the real estate, with Botur and Nixdorf each holding a 50% share in Botnix. Botnix assumed NYN's lease with Tennisport, and extended its expiration date to March 2008. In 1986, after Nixdorf's death, Botnix was reorganized as Nixbot Realty Associates (hereinafter Nixbot). Botur held a 49.5% interest in Nixbot, while Nixdorf's heirs, Michael Nixdorf, Martin Nixdorf, Matthias Nixdorf, and Renate Nixdorf (hereinafter collectively the Nixdorfs), each held 12.375%, and Nixbot Management Corporation, which was solely owned by Botur, held the remaining 1%. Thus, Botur effectively controlled 50.5% of Nixbot Realty, and the Nixdorfs controlled the remaining 49.5% interest. Nixbot thereafter assumed Botnix's lease with Tennisport. In 2002, apparently in anticipation of the condemnation of the subject property, ownership of the real property was restructured, so that Nixbot Realty held a 50.5% interest in the subject property, and the Nixdorfs each held a 12.375% in the subject property, all as tenants-in-common.

On February 25, 2002, the petitioner, a subsidiary of the New York State Urban Development Corporation, doing business as Empire State Development (see McKinney's Uncons Laws of NY

§ 6255 [8] [Urban Development Corporation Act (UDCA) § 5 (8), as added by L 1968, ch 174, § 1, as amended]), condemned the subject property. On March 14, 2003, the petitioner made an advance payment of approximately $10 million to Tennisport as compensation for the taking of its trade fixtures. Tennisport filed a claim for additional compensation, and Nixbot and the Nixdorfs (hereinafter collectively the fee claimants) filed a claim to compensate them for the taking of the fee. The petitioner moved for summary judgment dismissing Tennisport's claim, contending that the improvement of the subject property with fixtures referable to the operation of the tennis club was inconsistent with the assessments of the highest and best use made by the parties' appraisers, and that, accordingly, the fixtures did not add to the value of the fee, and Tennisport was not entitled to compensation for them. The petitioner further argued, inter alia, that Botur was the sole owner of Tennisport and held the majority interest in the fee and that, accordingly, compensation should be paid as if the subject property were owner-occupied, rather than leased to a tenant. Consequently, the petitioner sought to recoup its advance payment to Tennisport, plus interest. The Supreme Court agreed with the petitioner, and awarded it summary judgment dismissing Tennisport's claim for compensation for the taking of its trade fixtures. Although the inquest on the valuation of the subject property had not yet been held, the court also directed that the petitioner was to recoup its advance payment via a set off against the award for the taking of the fee. Nixbot and Tennisport challenge the dismissal of Tennisport's claim for compensation for the taking of its trade fixtures and the setoff, and the Nixdorfs separately challenge the setoff against their portion of the award for the taking of the fee.

In general, "a corporation has a separate legal existence from its shareholders even where the corporation is wholly owned by a single individual" (*Baccash v Sayegh*, 53 AD3d 636, 639 [2008]). Although "[o]ne of the primary legitimate purposes of incorporating is to limit or eliminate the personal liability of corporate principals" (*Flushing Plaza Assoc. #2 v Albert*, 102 AD3d 737, 738 [2013]; *see East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc.*, 66 AD3d 122, 126 [2009], *affd* 16 NY3d 775 [2011]), "the doctrine of piercing the corporate veil allows a corporation's separate legal existence to be disregarded to prevent fraud and achieve equity" (*Baccash v Sayegh*, 53 AD3d at 639; *see Flushing Plaza Assoc. #2 v Albert*, 102 AD3d at 738; *Campone v Pisciotta Servs., Inc.*, 87 AD3d 1104, 1105 [2011]). "A plaintiff seeking to pierce the corporate veil must demonstrate that a court in equity should intervene

because the owners of the corporation exercised complete domination over it in the transaction at issue and, in doing so, abused the privilege of doing business in the corporate form, thereby perpetrating a wrong that resulted in injury to the plaintiff" (*East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc.*, 66 AD3d at 126; *see Flushing Plaza Assoc. #2 v Albert*, 102 AD3d at 738; *Peery v United Capital Corp.*, 84 AD3d 1201, 1202 [2011]; *Campone v Pisciotta Servs., Inc.*, 87 AD3d at 1105; *Williams v Lovell Safety Mgt. Co., LLC*, 71 AD3d 671 [2010]).

Here, the petitioner points to Botur's sole ownership of Tennisport and his acknowledged day-to-day control over Nixbot, and argues that, on this basis, the Supreme Court properly determined that Tennisport and Nixbot were essentially Botur's alter egos. However, as this Court has observed, "if, standing alone, domination over corporate conduct in a particular transaction were sufficient to support the imposition of personal liability on the corporate owner, virtually every cause of action brought against a corporation either wholly or principally owned by an individual who conducts corporate affairs could also be asserted against that owner personally, rendering the principle of limited liability largely illusory. Thus, the party seeking to pierce the corporate veil must also establish 'that the owners, through their domination, abused the privilege of doing business in the corporate form' " (*East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc.*, 66 AD3d at 126, quoting *Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 142 [1993]; *see Flushing Plaza Assoc. #2 v Albert*, 102 AD3d at 739; *but see Williams v Lovell Safety Mgt. Co., LLC*, 71 AD3d at 672). Thus, in determining whether an owner has "abused the privilege of doing business in the corporate form," a court may consider, inter alia, whether there was a "failure to adhere to corporate formalities, inadequate capitalization, commingling of assets, and use of corporate funds for personal use" (*East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc.*, 66 AD3d at 126, 127 [internal quotation marks omitted]; *see Peery v United Capital Corp.*, 84 AD3d at 1202).

In this case, although Botur's deposition does indicate a failure to adhere to some corporate formalities, such as holding board meetings, there is no indication that either Tennisport or Nixbot was undercapitalized, that they commingled assets, or that Botur appropriated the funds of either for his personal use. Similarly, the record indicates that Tennisport and Nixbot (and its predecessor, Botnix) were formed at separate times and for separate, legitimate purposes, namely, to own and operate the

tennis club and to own the real property, respectively (*see Longshore v Davis Sys. of Capital Dist.*, 304 AD2d 964, 965 [2003]). The record further demonstrates the existence of a bona fide lease between Nixbot and Tennisport, notwithstanding the petitioner's conclusory allegations that the lease did not reflect a fair market price. Moreover, the record lacks even an allegation, much less any evidence, that Botur or the corporations perpetrated any fraud against the petitioner. Instead, the record clearly establishes that both Tennisport and Nixbot were incorporated or formed decades before the condemnation of the subject property, and not to obtain some advantage in this litigation. In any case, the Nixdorfs' separate interest in the fee fully justified the separate incorporation of the tennis club as Tennisport, and the establishment of the real estate businesses as Nixbot and Nixbot Management Corporation, and precludes the treatment of Tennisport and Nixbot as alter egos of one another. In short, the petitioner did not carry its prima facie burden of showing that Botur abused the corporate form or that the subject property should be treated as owner-occupied for the purpose of determining just compensation for the taking of trade fixtures (*see Williams v Lovell Safety Mgt. Co., LLC*, 71 AD3d at 672).

Where the condemnor appropriates land to which a tenant has annexed fixtures, the tenant is entitled to compensation "for his [or her] interest in any annexations to the real property which but for the fact that the real property has been taken, he [or she] would have had the right to remove at the end of his [or her] lease" (*Matter of City of New York*, 256 NY 236, 243 [1931]; *see Matter of City of New York [G & C Amusements]*, 55 NY2d 353, 359 [1982]; *Matter of City of New York [Glantz]*, 55 NY2d 345, 351 [1982]; *Matter of Mazur Bros., Inc. v State of New York*, 97 AD3d 826, 829 [2012]; *Matter of Mazur Bros. Realty, LLC v State of New York*, 69 AD3d 726, 728 [2010]; *Matter of Village of Port Chester*, 42 AD3d 465, 466-467 [2007]). This is true even where the condemnor has no use for the fixtures attached, because "condemnation is a forced sale that places the State and the claimant in the position of vendee and vendor" (*Matter of City of New York [Kaiser Woodcraft Corp.]*, 11 NY3d 353, 361 [2008]; *see Jackson v State of New York*, 213 NY 34, 35 [1914]). As the Court of Appeals has observed, "[t]he law of fixtures was evolved by the judiciary in order to ameliorate the harsh result to those who substantially improved property but who had less than a fee interest. These rules, when applied in an eminent domain proceeding, protect the owner of this type of property from being deprived of compensation when the land upon which they are situated is condemned" (*Rose v

*State of New York*, 24 NY2d 80, 85-86 [1969] [citations omitted]). Thus, an award for the taking of fixtures is properly seen as "just compensation to the claimant, not a windfall" (*Matter of Village of Port Chester*, 42 AD3d at 467).

Here, because the petitioner failed to make a prima facie showing either that Tennisport and Nixbot were not truly distinct corporate entities, or that there was not a bona fide lease between them, the Supreme Court erred in granting the petitioner's motion for summary judgment dismissing Tennisport's claim for compensation for the taking of its trade fixtures. It therefore also erred in directing that this award be set off against the eventual award to the fee claimants (*see generally* EDPL 304 [H]; *L. B. Oil Co. v State of New York*, 81 AD2d 856 [1981]).

In light of the foregoing, we need not reach the claimants' remaining contentions. Dillon, J.P., Balkin, Cohen and Barros, JJ., concur.