Bonanni v Horizons Invs. Corp. (2020 NY Slip Op 00563)





Bonanni v Horizons Invs. Corp.


2020 NY Slip Op 00563


Decided on January 29, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 29, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
SYLVIA O. HINDS-RADIX
BETSY BARROS
PAUL WOOTEN, JJ.


2017-06803
 (Index No. 17029/05)

[*1]Luciano Bonanni, et al., respondents-appellants,
v
Horizons Investors Corp., et al., appellants-respondents, Allan Hausknecht, etc., respondent, et al., defendants.


Oquendo Deraco PLLC, New York, NY (Luis A. Gonzalez, Ricardo E. Oquendo, Maria C. Deraco, and Carlos J. Cuevas of counsel), for appellants-respondents Horizons Investors Corp. and Benito Fernandez.
Laurence Shiff P.C., New York, NY, for respondents-appellants.



DECISION & ORDER
In an action, inter alia, to recover damages for breach of contract, the defendants Horizons Investors Corp., Benito Fernandez, and Comprehensive Imaging of New York, PLLC, appeal, and the plaintiffs cross-appeal, from a judgment of the Supreme Court, Suffolk County (Elizabeth Hazlitt Emerson, J.), entered May 10, 2017. The judgment, insofar as appealed from, upon a decision of the same court dated March 9, 2016, made after a nonjury trial, is in favor of the plaintiff MRI Enterprises, Inc., and against the defendants Horizons Investors Corp. and Benito Fernandez in the principal sum of $284,043, is in favor of the plaintiff MRI Enterprises, LLC, and against the defendants Horizons Investors Corp. and Benito Fernandez in the principal sum of $724,814, and directed the defendants Horizons Investors Corp. and Benito Fernandez to provide the plaintiff MRI Enterprises, Inc., an accounting. The judgment, insofar as cross-appealed from, is in favor of the plaintiff MRI Enterprises, Inc., and against the defendant Benito Fernandez in the principal sum of only $284,043, and in favor of the plaintiff MRI Enterprises, LLC, and against the defendants in the principal sum of only $724,814.
ORDERED that the appeal by the defendant Comprehensive Imaging of New York, PLLC, is deemed dismissed pursuant to 22 NYCRR 1250.10(a); and it is further,
ORDERED that the judgment is affirmed insofar as appealed from by the defendants Horizons Investors Corp. and Benito Fernandez, and insofar as cross-appealed from; and it is further,
ORDERED that one bill of costs is awarded to the plaintiffs, payable by the defendants Horizons Investors Corp. and Benito Fernandez.
In 2001, the plaintiff Luciano Bonanni, via his wholly owned corporation, the plaintiff MRI Enterprises, Inc. (hereinafter MRI Inc.), together with the defendant Benito Fernandez, via his wholly owned corporation, the defendant Horizons Investors Corp. (hereinafter Horizons), the defendant Solomon Kalish, via his wholly owned corporation, the defendant Adex Management Corp. (hereinafter Adex), and the defendant Allan Hausknecht, a physician, formed the plaintiff MRI Enterprises, LLC (hereinafter MRI LLC), for the purpose of providing magnetic resonance imaging [*2](hereinafter MRI) services to local hospitals. MRI Inc., Adex, and Hausknecht each held a 20% interest in MRI LLC, and Horizons held the remaining 40%. Because medical services cannot be provided by nonphysicians, the members of MRI LLC also formed the defendant Comprehensive Imaging of New York, PLLC (hereinafter CINY), which was 99% owned by Hausknecht and 1% owned by another physician, to provide the medical services to the hospitals.
In April 2005, a dispute arose among the MRI LLC members regarding which MRI scanners should be purchased for use at one of MRI LLC's client hospitals. Although the parties disagree as to what Bonanni said during a contentious meeting, it is undisputed that Bonanni had managed the day-to-day operations of MRI LLC prior to April 2005, and that he was thereafter excluded from management of MRI LLC and Kalish assumed Bonanni's duties. While the parties thereafter discussed the respective rights and duties of Bonanni/MRI Inc. and the remaining members, the remaining members never acquired MRI Inc.'s interest in MRI LLC but nevertheless failed to include MRI Inc. in future distributions.
In July 2005, Bonanni, MRI Inc., individually and as a member of MRI LLC, and MRI LLC (hereinafter collectively the plaintiffs) commenced this action, asserting causes of action, inter alia, alleging breach of contract and conversion, and seeking an accounting. After a nonjury trial, the Supreme Court found that although Bonanni may have resigned as MRI LLC's manager, he did not withdraw MRI Inc. from membership in MRI LLC, and in response, the remaining members chose to "freeze MRI Inc. out" rather than compensate MRI Inc. for its interest in MRI LLC. Based on the evidence, which included analysis by a forensic accountant, the court found that, rather than disbursing future distributions to MRI Inc., the remaining members divided MRI Inc.'s 20% share among themselves such that Horizons received an additional 10% share (50% total) and Adex and Hausknecht each received an additional 5% share (25% total each).
Based upon these findings, the Supreme Court found in favor of MRI Inc. on the causes of action alleging breach of contract, conversion, breach of fiduciary duty, and unjust enrichment. The court also found in favor of MRI LLC on the derivative causes of action alleging misappropriation of corporate opportunities and looting, waste, and misappropriation of assets, concluding that the defendants engaged in self-dealing and other misconduct. In addition, the court found that, as a member of MRI LLC, MRI Inc. was entitled to an accounting of certain payments made by or for MRI LLC and CINY.
Based upon its interpretation of the evidence and calculations, in a judgment entered May 10, 2017, the Supreme Court awarded damages to MRI Inc. in the principal sum of $568,086, payable 50% by Horizons and Fernandez, 25% by Adex and Kalish, and 25% by Hausknecht. On the derivative causes of action, the court awarded damages to MRI LLC in the principal sum of $724,814, payable jointly and severally by all the defendants. The court also directed the defendants to provide MRI Inc. an accounting of certain payments made by or for MRI LLC and CINY. Horizons and Fernandez (hereinafter together the appellants) appeal, and the plaintiffs cross-appeal.
The appellants contend that the judgment was improperly entered by the Suffolk County Clerk rather than the Supreme Court. However, the appellants have waived this contention since they did not move within a reasonable time after the entry of the judgment either to vacate it or have it resettled (see John R. Higgitt, Supplementary Practice Commentaries, McKinney's Cons Law of NY, CPLR C5015:3; David D. Siegel, Practice Commentaries, McKinney's Cons Law of NY, CPLR C5015:3, C5015:6; see also Johnson v Societe Generale S.A., 94 AD3d 663, 665; Deygoo v Eastern Abstract Corp., 204 AD2d 596, 596-597). In any event, under the circumstances presented, the appellants' contention does not require reversal. The judgment directed an accounting, which is a form of equitable relief (see Roslyn Union Free School Dist. v Barkan, 16 NY3d 643, 650; Estate of Calderwood v ACE Group Intl. LLC, 157 AD3d 190, 199), and therefore, contained "relief other than for money or costs only" and should have been reviewed by the Supreme Court prior to its entry (CPLR 5016[c]). However, since the provision of the judgment directing an accounting conforms to the corresponding portion of the decision after trial, no correction is required (see CPLR 5019[a]; Kim v Schiller, 112 AD3d 671, 675; Spier v Horowitz, 16 AD3d 400, 401).
The appellants contend that MRI Inc. is not entitled to an accounting from CINY because MRI Inc. never held a membership interest in CINY. In support of this contention, they argue that there was no de facto merger between MRI LLC and CINY and that CINY was not a successor in interest to MRI LLC. We disagree.
"Generally, a corporation which acquires the assets of another is not liable for the torts of its predecessor'" (Shea v Salvation Army, 169 AD3d 1081, 1082, quoting Schumacher v Richards Shear Co., 59 NY2d 239, 244; see Nationwide Mut. Fire Ins. Co. v Long Is. A.C., Inc., 78 AD3d 801). "However, such liability may arise if the successor corporation expressly or impliedly assumed the predecessor's tort liability, there was a consolidation or merger of seller and purchaser, the purchaser corporation was a mere continuation of the seller corporation, or the transaction was entered into fraudulently to escape such obligations" (Shea v Salvation Army, 169 AD3d at 1082; see Schumacher v Richards Shear Co., 59 NY2d at 245; Matter of AT & S Transp., LLC v Odyssey Logistics & Tech. Corp., 22 AD3d 750, 752). Accordingly, "[a] transaction structured as a purchase of assets may be deemed to fall within this exception as a de facto merger" (Matter of AT & S Transp., LLC v Odyssey Logistics & Tech. Corp., 22 AD3d at 752).
"The hallmarks of a de facto merger are the continuity of ownership; cessation of ordinary business and dissolution of the [predecessor] as soon as possible; assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and, continuity of management, personnel, physical location, assets, and general business operation'" (id., quoting Fitzgerald v Fahnestock & Co., 286 AD2d 573, 574; see Energy Coop. of Am., Inc. v Luigi's Family Bakery, Inc., 170 AD3d 1629, 1629-1630). Where the acquired corporation is "shorn of its assets" and becomes a "shell," legal dissolution is not required to support a finding of de facto merger (Matter of AT & S Transp., LLC v Odyssey Logistics & Tech. Corp., 22 AD3d at 753; see Energy Coop. of Am., Inc. v Luigi's Family Bakery, Inc., 170 AD3d at 1630). "[I]n non-tort actions, continuity of ownership is the essence of a merger'" (Washington Mut. Bank, F.A. v SIB Mtge. Corp., 21 AD3d 953, 954, quoting Cargo Partner AG v Albatrans, Inc., 352 F3d 41, 47 [2d Cir]; see R & D Elecs., Inc. v NYP Mgt., Co., Inc., 162 AD3d 1513, 1516).
Here, in early 2012, MRI LLC's assets and employees were transferred to CINY, MRI LLC's business ceased, and CINY provided the services to the client hospitals that MRI LLC had previously performed. The equipment, assets, business operation, management, and some of the personnel remained unchanged. The forensic accountant who testified on behalf of the plaintiffs identified numerous transactions that were "questionable" or "highly unusual," and others that were indicative of self-dealing. Most notably, MRI LLC transferred an MRI scanner to CINY at a price significantly less than its fair market value. Accordingly, the Supreme Court's conclusion that in late 2012/early 2013 there was a de facto merger between MRI LLC and CINY was supported by the record. Therefore, MRI Inc. was entitled to an accounting from CINY.
Contrary to the appellants' contention, an accounting from CINY to MRI Inc. does not violate the prohibition on physicians splitting fees with nonphysicians (see generally Education Law §§ 6509-a, 6530[19]; Linchitz Practice Mgt., Inc. v Daat Med. Mgt., LLC, 165 AD3d 908, 909-910). The payment by CINY of debts owed to it by MRI LLC did not constitute fee-splitting. CINY's contracts with MRI LLC set fees for MRI LLC's services that were not based on CINY's income or profits. Thus, to the extent that an accounting reveals contractual debts owed by CINY to MRI LLC, there is nothing to indicate that the payment of such debts would entail improper fee-splitting, any more than payments by CINY for other contractual services, such as utilities, equipment leases, and employees, would entail improper fee-splitting.
Contrary to the appellants' further contention, and as the Supreme Court determined, the business judgment rule does not preclude the plaintiffs' causes of action in this action. The business judgment rule provides that courts will defer to the unbiased, good-faith determinations of corporate officers that certain actions will promote the corporation's best interest (see Matter of Kenneth Cole Prods., Inc., Shareholder Litig., 27 NY3d 268, 274; Bratone v Conforti-Brown, 150 AD3d 1068, 1072). Here, however, the plaintiffs do not object to the business decisions made at the [*3]April 2005 meeting or even to the remaining members' determination to exclude Bonanni from the management of MRI LLC in light of their disagreements asserted at the meeting. Instead, the plaintiffs seek only to recover the distributions to which MRI Inc. remained entitled, since Bonanni did not withdraw MRI Inc.'s interest in MRI LLC and the remaining members did not acquire MRI Inc.'s interest in MRI LLC. While the business decisions to take steps that Bonanni opposed and thereafter to exclude him from management of MRI LLC may have been made in good faith, the decision to effectively cancel or seize MRI Inc.'s 20% interest in MRI LLC cannot be characterized as a good-faith decision made in the best interest of MRI LLC. Accordingly, we agree with the court's determination to reject the appellants' reliance on the business judgment rule.
In calculating damages, the Supreme Court deducted from the distributions made by MRI LLC the salaries paid by MRI LLC to Kalish and Fernandez. The appellants argue that the court should also have deducted the sum of $548,658 paid to Hausknecht as salary. However, the record establishes that Hausknecht was compensated via distributions from CINY, not via a salary paid to him by MRI LLC, and the appellants admit as much in their brief. In particular, the record demonstrates that in June 2007, the remaining members agreed that MRI LLC would pay Hausknecht the sum of $7,000 monthly and that payments totaling approximately $550,000 were made. However, the record supports the court's conclusion that these payments were profit distributions, not salary.
Contrary to the appellants' arguments, the record supports the Supreme Court's conclusion that certain payments made to nonparty Warminster Investors Corporation (hereinafter Warminster), a company controlled by Fernandez, were actually disguised profit distributions by MRI LLC to Fernandez and, therefore, were properly included in the calculation of damages. The record demonstrates that in 2007, the remaining members of MRI LLC agreed that Warminster would be paid the sum of $16,000 monthly, which Fernandez testified was to compensate Warminster for providing office space, bookkeeping services, and warehouse space for MRI LLC's records, plus Fernandez's own services. However, the bookkeeper for Horizons (which was owned by Fernandez) testified that Warminster was a real estate holding company, that Warminster provided no services to MRI LLC, and that the bookkeeper did not understand the purpose of payments from MRI LLC to Warminster. Kalish testified that the payments were in fact distributions to Fernandez, an assertion that is supported by the apparent substitution of Warminster for Horizons in resolutions providing for distributions to the remaining members.
The appellants also contend that to the extent that the plaintiffs' causes of action are predicated upon payments made to Warminster, such causes of action are barred by the doctrine of res judicata in light of a stipulation of discontinuance made in another action. However, this defense was waived, since the appellants failed to raise the defense of res judicata in their amended answer, which was filed after the making of the subject stipulation of discontinuance, or in a motion to dismiss (see CPLR 3211[a][5]; [e]).
Fernandez contends that he should not have been held personally liable for the damages awarded against Horizons, much less for the entire amount of damages awarded to MRI LLC. " The general rule . . . is that a corporation exists independently of its owners, who are not personally liable for its obligations, and that individuals may incorporate for the express purpose of limiting their liability'" (Sky-Track Tech. Co. Ltd. v HSS Dev., Inc., 167 AD3d 964, 964, quoting East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc., 66 AD3d 122, 126, affd 16 NY3d 775; see Town-Line Car Wash, Inc. v Don's Kleen Mach. Kar Wash, Inc., 169 AD3d 1084, 1085). Thus, "a plaintiff seeking to pierce the corporate veil must show that (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury" (Cortlandt St. Recovery Corp. v Bonderman, 31 NY3d 30, 47 [internal quotation marks omitted]; see Conason v Megan Holding, LLC, 25 NY3d 1, 18; Town-Line Car Wash, Inc. v Don's Kleen Mach. Kar Wash, Inc., 169 AD3d at 1085; Sky-Track Tech. Co. Ltd. v HSS Dev., Inc., 167 AD3d at 964).
It is the plaintiff's burden to demonstrate " that the corporation was dominated as to [*4]the transaction attacked and that such domination was the instrument of fraud or otherwise resulted in wrongful or inequitable consequences'" (Cortlandt St. Recovery Corp. v Bonderman, 31 NY3d at 47, quoting TNS Holdings v MKI Sec. Corp., 92 NY2d 335, 339). "Factors to be considered in determining whether the owner has abused the privilege of doing business in the corporate form include whether there was a failure to adhere to corporate formalities, inadequate capitalization, commingling of assets, and use of corporate funds for personal use" (Sky-Track Tech. Co. Ltd. v HSS Dev., Inc., 167 AD3d at 965 [internal quotation marks omitted]; see Matter of Queens W. Dev. Corp. [Nixbot Realty Assoc.], 121 AD3d 903, 906; East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc., 66 AD3d at 127).
Here, in addition to identifying transactions that were "questionable," "highly unusual," or indicative of self-dealing, the plaintiffs' forensic accountant identified a specific transaction in which it appeared that Fernandez was "trying to manipulate the books" to hide a transaction, and another series of transactions that appeared to be a liquidation of an account which held approximately $220,000 but which excluded MRI Inc. from the distribution. Likewise, the seizure of MRI Inc.'s 20% interest in MRI LLC with no process and no payment to MRI Inc. was a "failure to adhere to corporate formalities" regarding interests in the corporation, and the manipulation of transactions between MRI LLC and CINY resulted in a "commingling of assets" and/or the "use of corporate funds for personal use" (Sky-Track Tech. Co. Ltd. v HSS Dev., Inc., 167 AD3d at 965 [internal quotation marks omitted]; see Matter of Queens W. Dev. Corp. [Nixbot Realty Assoc.], 121 AD3d at 906; East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc., 66 AD3d at 127). Accordingly, the record as a whole supports the Supreme Court's conclusion that despite the fact that Fernandez did not control a majority of MRI LLC's stock, he "exercised complete domination of [MRI LLC]" and did so in a manner that resulted in "a fraud or wrong against [MRI Inc.]" and that "resulted in [MRI Inc.'s] injury" (Cortlandt St. Recovery Corp. v Bonderman, 31 NY3d at 47 [internal quotation marks omitted]; see Conason v Megan Holding, LLC, 25 NY3d at 18; Town-Line Car Wash, Inc. v Don's Kleen Mach. Kar Wash, Inc., 169 AD3d at 1085; Sky-Track Tech. Co. Ltd. v HSS Dev., Inc., 167 AD3d at 964).
"Joint and several liability, primarily a tort law concept, imposes on each wrongdoer responsibility for the entire damages awarded, even though a particular wrongdoer's conduct may have caused only a portion of the loss. The rationale for such liability is that the wrongdoers are considered part of a joint enterprise and a mutual agency such that the act of one is the act of all and liability for all that is done is visited upon each'" (Matter of Seagroatt Floral Co. [Riccardi], 78 NY2d 439, 448, quoting Ravo v Rogatnick, 70 NY2d 305, 309 [citation omitted]; see Bichler v Eli Lilly & Co., 55 NY2d 571, 580-581). Thus, " [w]hen two or more tort[ ]feasors act concurrently or in concert to produce a single injury, they may be held jointly and severally liable'" (Palermo v Taccone, 79 AD3d 1616, 1619, quoting Ravo v Rogatnick, 70 NY2d at 309; see Hoffmann v Horn, 157 AD3d 871, 873; Musco v Conte, 22 AD2d 121, 123). In contrast, "where multiple tort-feasors neither act in concert nor contribute concurrently to the same wrong, they are not joint tort-feasors; rather, their wrongs are independent and successive'" (Ravo v Rogatnick, 70 NY2d at 310, quoting Suria v Shiffman, 67 NY2d 87, 98).
Since we agree with the Supreme Court's determination to pierce MRI LLC's corporate veil to hold Fernandez personally liable, we agree with the court's determination to impose joint and several liability against the appellants with respect to the damages award in favor of MRI LLC on the tort theories of looting, waste, and misappropriation of assets and corporate opportunities (see Matter of Seagroatt Floral Co. [Riccardi], 78 NY2d at 448-450).
On the other hand, contrary to the plaintiffs' contentions, we agree with the Supreme Court's determination not to impose joint and several liability against Fernandez for the entire damages award in favor of MRI Inc. The court imposed liability for MRI Inc.'s share of distributions by MRI LLC in proportion to the interests of the remaining members, i.e., 50% to the appellants, 25% to Adex and Kalish, and 25% to Hausknecht. Since the court was able to determine the proportions in which the defendants profited from the seizure of MRI Inc.'s share in MRI LLC, and since the theories under which MRI Inc. recovered against them were primarily contractual in nature, we agree with the court's determination to divide the defendants' liability to MRI Inc. in proportion [*5]to their shares in MRI LLC.
The parties' remaining contentions are without merit.
SCHEINKMAN, P.J., HINDS-RADIX, BARROS and WOOTEN, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court